JOSEPH J. COOK *v.* THE PRESIDENT, &C., OF THE NEW YORK FLOATING DRY DOCK COMPANY.(*a*)

The owner of a machine, made by him to be hired out to others for a particular purpose, is under an obligation to make such machine sufficiently strong to answer the purpose intended. If an injury occurs through a defect in it, the owner is liable.

Wherever the law imposes a duty on a man, a neglect of that duty renders him liable to any one injured by such neglect.

The authorities upon this point collated and examined.

And he is equally liable, whether the injury is occasioned by a neglect or disregard of some special obligation or duty due to the injured party, or by a neglect or disregard of a public duty or obligation.

L. employed S. and L. to repair a ship, and hired the defendants' dry dock for the purpose of making the repairs. S. and L. erected a scaffolding upon standards attached to the dock, and belonging to the defendants, and which, by the rules of the defendants, they were required to use for that purpose. Owing to the insufficiency of the standards the scaffolding gave way, and C., who was employed upon it by S. and L., in making repairs, fell upon the dock, and was injured.

*Held*, that the defendants were liable to him in an action for damages therefor, although there was no privity of contract between him and them.

APPEAL by plaintiff from an order granting a new trial. This was an action brought to recover damages for injuries to the person of the plaintiff, occasioned by the falling of a staging. George Law, one of the owners of the steamer Ohio, employed the firm of Simonson & Lugar to repair that steamer, and hired the dock of the defendants for that purpose. The business of the defendants is simply to raise vessels from the water, for the purpose of being repaired, and lower them again when the repairs are completed. They make no repairs themselves.

The Ohio was raised in January, 1851. Simonson & Lugar employed one Edward Hart to put up the necessary staging to be used in repairing the steamer, and it was put up by him un-

---

(*a*) See this case, 18 N. Y. Reports, p. 229.

der Simonson & Lugar's supervision. As a part of the dock of the company, and for the purpose of erecting scaffoldings, there are placed along the sides upright pieces of timber, called standards. These are fastened to the dock by staples. It is against the rules of the company to drive spikes into the dock; those using it being required to erect their stagings upon these standards. The scaffolding was erected thereon accordingly. On the 14th of January, 1851, while the plaintiff was upon this staging, employed in the repairs of the ship, the staples were by the weight of the staging drawn out, the standards gave way, the staging fell, and the plaintiff was thrown down upon the dock, and seriously injured. The evidence showed that the staples which fastened the standards to the dock were not driven through and clenched upon the other side, as in the opinion of several witnesses should have been done. The evidence, however, as to whether the accident arose from the improper erection of the staging, or from the insecurity of the standards, was conflicting.

The cause was tried before Judge Daly and a jury. He denied a motion made by the defendants for a nonsuit, and left it to the jury to say whether the accident resulted from the improper construction of the standards, or from negligence in the erection of the staging, instructing them that in the former case they were to render a verdict for the plaintiff, otherwise for the defendant. The jury found a verdict for the plaintiff for $6,000.

The defendants then moved on a case for a new trial, which was granted at special term, by Judge Daly, who delivered the following opinion :

DALY, J.—It is very doubtful whether there was sufficient evidence in this case to support the finding of the jury. I think it appears very plainly from the testimony, that the fall of the staging was owing to the insecure manner in which it was put up by the person employed by Simonson & Lugar to erect it ; that it was constructed in such a way as to subject the standard affixed to the plaintiff's dock to an amount of lateral pressure

which it could not resist, and was never intended to bear. But conceding that there was sufficient evidence to sustain the finding of the jury, that the staging was properly erected, and that the accident was owing entirely to the insecure manner in which the standard was bolted or fastened to the dock, still the plaintiff can maintain no action against the defendants. Law, the owner of the vessel, made a contract with the defendants for the use of their Floating Dry Dock in raising and supporting his steamship while she underwent certain repairs, and he made a distinct and separate contract with Simonson & Lugar, the shipbuilders, to do the repairs. They employed one Hart, a rigger and shipwright, to erect the necessary staging to enable them to caulk and copper the vessel, and they also employed the plaintiff, who, with other workmen in their employ, was on the staging when it fell, and caused the injury for which the action is brought. In *Winterbottom* v. *Wright* (10 Mees. & Welsb. 109), it was held that a coachman, in the employ of a person who had contracted to drive a mail coach along a line of road, could not maintain an action for injuries he had sustained through the breaking down of the coach from *latent* defects in its construction, against a person who, under a contract with the postmaster general, had agreed to provide the coach for the route. The case under consideration is in no respect stronger than the one here stated, and the principle which governed in the decision of the one is equally applicable to the other. If such actions were allowed, the greatest complexity and difficulty would arise in attempting to adjust the respective rights and liabilities of parties. The breaking of a chain cable of a ship, as was suggested in *Winterbottom* v. *Wright*, in consequence of which the vessel runs aground, would, were such a right of action conceded, entitle every person, injured in person and property by the accident, to bring an action, not only against the manufacturers of the cable, but against the vendors of the iron. The only safe and practical rule is to confine the right of action to those who stand in the relation of contracting parties, or *to cases where the injury is caused by the disregard or neglect, of some obligation or duty* which the party causing

it owes to *the party injured.* Thus, where one leaves an excava-
tion in a public street, at night, without proper light or safe-
guards, through which neglect a passer-by falls in and breaks his
leg, an action lies against the party prosecuting the work at the
suit of the party injured, because he assumes the obligation to
conduct it in such a careful manner as to prevent injury to those
who have, in common with himself, a right to the free use of
the street; and so an action is maintainable against one who
undertakes a public duty, by any one who suffers injury through
his neglect in the discharge of that duty, there being an implied
obligation to the public to discharge it.   But the manufac-
turer or vendor of an article does not become responsible to
every one, into whose hands it may subsequently pass, for a
pecuniary loss or injury arising from *latent defects* in the article,
or its unfitness for the use to which it is applied.   He may be
responsible to him for whom he manufactured it, or to whom he
rented it for a particular purpose, should it cause bodily harm
or injury to the party renting it or his employees, upon being
applied to the use for which it is intended, but in such a case the
liability of the manufacturer or vendor is founded upon the pre-
sumption of fraud arising from his delivering the article with
knowledge that it was liable to produce injury from its unfitness
for the purposes for which it was purchased.   Such was the case
of *Levy* v. *Langridge* (2 Mees. & Welsb. 519; 4 ibid. 337), in
which the defendant sold a gun to the father of the plaintiff,
with knowledge that it was for plaintiff's use, representing it to
be of a particular manufacture, and to be a good, safe and secure
gun, when in fact he knew it to be otherwise.   The gun, upon
being used by the plaintiff, burst, severely wounding and maiming
him, and the action was held to be maintainable because the
plaintiff, for whose use, as well as that of his father, the gun was
bought, was a party contracting, and the representations made
to the father was a fraud upon both.   As a general rule, such
actions must be limited to those between whom there is a con-
tract express or implied, *or where a public duty or obligation arises,*
*as in cases analogous to those stated.*   In the present case, there

was no privity of contract between Cook and the defendants. Their contract was with Simonson & Lugar. He was in the employ of the latter. Simonson & Lugar erected the staging, or employed the person who erected it, and if they or their employee made use of a defective apparatus attached to the dock, for the use of which Law had contracted with the defendants, the plaintiff must look to Simonson & Lugar. He can maintain no action against the defendants.

From an order granting a new trial the plaintiff appealed to the general term.

*T. E. Tomlinson and Washington Irving*, for the appellant.

I. If the accident occurred through the carelessness of the defendants, it is no answer to allege the carelessness of others.

(a) The court can see judicially, without evidence, that a staple driven into a piece of timber without being clinched, which could only be retained in its place by the cohesiveness of the wood, and to which a rope was to be attached to support in any way a staging, is a grossly careless and improvident structure ; the drying up of the wood, the mere oscillation of the staging without any weight, would pull it out.

(b) It is abundantly in evidence, that the defendants knew (or, which is the same thing, the law presumed them to know) that the staples were unsafe, dangerous, and negligently fastened. This brings this case within the class where a knowledge of the imperfection of an article and an appropriation of it renders the maker liable.

The defendants knew that these staples were unfit, and not only caused them to be used, but prevented the use of others.

II. It is a fundamental principle of adjudication, where a loss must fall on one or other of two innocent persons, that he through whose negligence or want of caution the injury has been effected should bear the loss. Here it is proved, found by the jury, and conceded, that without the negligence or want of caution of the defendants, this injury could not have been effected. 1 Taunt.

76 ;· 5 Barn. & Cress. 750 ; Tomlin's Law Dictionary, tit. Negligence.

III. This action is not founded in privity of contract, but on negligence. It is an indisputable rule, that the party by whose negligent act the injury is done is liable, and privity of contract has no relation to it whatever. 6 J. R. 90 ; 1 Cow. Treat. 347 ; 11 East Rep. 60 ; 6 Cow. 189 ; 9 Wend. 1 ; 11 J. R. 92 ; 2 Barb. 165 ; Harrison Digest, 259 ; 15 Jurist's Ed. Eng. Rep. 1053 ; 1 Carr. & Marsh. R. 64 ; Swift's Dig. (Conn.) 566 ; 1 Harrison Digest, 1464 ; *Welsh* v. *Lawrence*, 2 Chit. Rep. 262 ; 3 Neville & Perry, 239 ; 1 W. W. & Hodges, 149.

IV. In cases of latent defects, because there is no negligence, a remedy is given on the theory of contract ; and on that theory there must be privity. Cow. Treat. 349 ; Swift Digest, 566 ; 7 Hill, 101 ; 3 Den. 357 ; Harrison Dig. Sup't, 254.

V. There is a duty or obligation, imposed by law on all, to build, work, construct and provide *without negligence ;* and, if either is done with negligence, the guilty party is responsible to whomsoever may be injured. 2 Chit. Rep. 262 ; 3 Nev. & P. 239 ; 1 W. W. & Hodges, 149 ; 1 Swift's Digest (Conn.), 53 ; 4 Den. 464.

VI. The jury found that, by the negligent act of the defendants, the plaintiff suffered loss, and the law imposes such loss on the defendants. See Judge Daly's opinion ; 6 Eng. Law & Eq. Rep. 349 ; 15 Jur. 1010 ; 2 Burr. Law Dic., tit. Negligence, 741 ; 1 H. Bl. 158 ; 5 B. & C. Rep. 750 ; 9 Wend. 1 ; 17 J. R. 92 ; Cow. Treat. 67.

*Benedict, Burr & Benedict,* for the respondents.

·I. The plaintiff has no right of action against the defendants. They contracted with George Law to raise the steamer Ohio on their floating dock, to enable him to make repairs. He employed Simonson & Lugar to erect the staging and to make the repairs to the ship. The plaintiff was hired by them to work upon the vessel as a journeyman ship-carpenter,

and went upon the staging erected by his employers, in order to work upon the ship.

(a) The defendants owed no duty to him. *Winterbottom* v. *Wright*, 10 Mee. & Wels. 109; *Priestley* v. *Fowler*, 3 ibid. 1; *Quarmann* v. *Burnett*, 6 ibid. 499.

The defendants had no control over Simonson & Lugar, nor over the staging or standards, &c., which for the time being were in the possession of Law, or of those whom he employed. *Milligan* v. *Wedge*, 12 A. & E. 737.

II. The motion for a nonsuit, which was renewed at the trial after the evidence was closed, ought to have been granted, for the reasons contained in the preceding points, and also because, upon the evidence, the strength of the standard and of the staple was sufficient to have resisted any reasonable pressure that could, if properly used for the purpose they were designed to fulfil, have been brought upon them.

INGRAHAM, FIRST JUDGE.—The defendants, being the owners of the Dry Dock, were employed by the owner of the steamer Ohio to raise her, for the purpose of having repairs done to her. After she was so raised, the owners employed Simonson & Lugar to repair the steamer. Simonson & Lugar made a contract with another person to put up the staging for that purpose. The plaintiff was in the employ of Simonson & Lugar, and while so employed by them in doing the repairs upon the staging, it fell, and the plaintiff sustained the injury for which this action was brought. The evidence showed that the injury was occasioned by the staples, which supported the standards on the floating dock, being wrenched from their places, and not from any imperfection in the staging. The standards were placed there by the defendants, and persons using the dock were compelled to use these standards, as the defendants would not permit other standards to be put up, on account of driving spikes into the dock.

The jury found for the plaintiff. The defendants moved for a new trial, which was granted by the judge who tried the cause,

upon the ground that the defendants having hired out the dock, they are not responsible for any injury that might happen to others while the dock was under the control of persons to whom it was hired :—from which order the plaintiff appeals.

The only question submitted to us on this appeal is, whether the defendants are responsible for any injuries sustained by third persons, not in their employ, while working for others on the dock.

That no action lies against the defendants, founded upon the contract in favor of any other persons than those to whom the dock was hired, is conceded. This was established by the cases cited, *Winterbottom* v. *Wright*, 10 Mee. &. Wels. 109 : *Priestley* v. *Fowler*, 3 ibid. 1; *Quarmann* v. *Burnett*, 6 ibid. 499.

But the plaintiff has suggested a distinction between an action upon the contract, and one in a case for negligently building a structure not sufficient for the purposes for which it was hired, and that, in such cases, any one who sustains injury by the negligence may maintain an action.

There can be no doubt of the general principle, that where the law imposes a duty on a man, a neglect of that duty exposes him to liability to any one injured from such neglect. Such was the case of *Townsend* v. *Susquehannah T. Co.* (6 J. R. 90), for not building a bridge sufficiently strong. In *Panton* v. *Holland* (17 J. R. 92), it was conceded that the defendant would be liable for injury to his neighbor in digging, if guilty of negligence in so doing. In *Burkle* v. *Dry Dock Co.* (2 Hall, 151), it was held that the defendants were bound to keep their dock in a condition to be safely used for the purposes for which it was intended, by those who should use it with ordinary care, but that their liability extended no further. So in *The Rector, &c.* v. *Buckhart* (3 Hill, 193), the defendants were held liable for negligence in leaving the wall of their building standing after a fire, whereby the plaintiff was injured. The same principle is found in *Regina* v. *Watts* (1 Salk. 357), *Payne* v. *Rogers* (2 H. Black. 349), and *Bush* v. *Steinman* (1 Bos. & Pul. 404). The principle was still more extended in the case of *The Mayor, &c.*, v. *Bailey* (2 Denio, 433). See, also, *Alston* v. *Grant*, 24 L. & E. Rep. 122.

In *Eakin* v. *Brown* (1 E. D. Smith, 43), it was said that the owner of the freehold was liable for injuries resulting from the condition of the freehold caused by his negligence, whether in his actual occupation or not. It was urged, upon the argument, as a distinction between those cases and the present, that the defendants are not responsible to the plaintiff for the injuries sustained by him, because they had rented their dock to third persons, who alone had the control and who alone are responsible for the damage the plaintiff has sustained. Taking this view of the case, and relying upon the cases before cited, the judge at special term made the order granting a new trial, which is now appealed from.

Upon the trial, the judge submitted to the jury the question respecting the defendants' negligence, and also whether the injury was occasioned by negligence in the construction of the machine or in the use of it; exempting the defendants from liability in the latter case. I am of the opinion that this charge was correct, and that the judgment should be sustained. The case of 10 Mee. & Wels. 109, was to recover for injuries arising from latent defects in the vehicle, and not from negligence in its construction.

The rule is stated in the same opinion, viz.: " to confine the remedy by action to those who stand in the relation of the contracting parties, or to cases where the injury is caused by the disregard or neglect of *some obligation or duty which the party causing it owes to the party injured,*" or, as is afterwards more fully stated, " *where a public duty or obligation arises;*" and that rule, I think, is a correct one. A man who makes a machine, to be hired out for a particular purpose, is under an obligation to make such machine so as to be sufficiently strong to answer the purpose intended.

In *The Mayor, &c.,* v. *Cunliff* (2 Comst. 163, 180), Judge Strong says: " The court below based the responsibility of the defendants on the general ground, that where one party sustains an injury by the misfeasance of the other, the sufferer may maintain an action for redress against the wrongdoer. That rule operates where the injury is effected directly by the wrong, or where it

results from the malconstruction of some object while it is in the possession, or under the control, or in any manner used under the agency or instruction of the party originally in fault."

In *Blunt* v. *Aiken* (15 Wend. 522) a distinction is made between the owner who uses or suffers others to use the property which causes the injury, and a former owner who had been guilty of negligence in the construction ; and in that case, it is said, if it had been shown that the defendant had rented (instead of sold) the premises, an action might be maintained against him.

In *Thomas* v. *Winchester* (2 Seld. 397) a dealer in drugs was held liable to all persons injured, by using as medicine drugs put up by him with a wrong label, although such drugs were not sold to the party injured by the defendant. A distinction which I have above referred to was drawn by the counsel, on the argument of that case, between the liability as arising on the contract as claimed in 10 Mees. & Welsb. 283, and kindred cases above referred to, and that arising on a duty imposed by law.

But, in addition to the fact found against the defendants in this case, of the insufficiency of the dock for the purposes for which it was used, there is here evidence that the defendants required the defective standard to be used, and prohibited the erection of any others upon the dock. This adds much force to the argument that the duty resting on the defendants was to make it sufficiently strong for the purposes for which it was rented. By such a rule, they compelled the use of the defective machine, and should be held responsible for the consequences. The case of *Godley* v. *Hagerty* (20 Penn. S. Rep. 387) is a strong case in support of the defendants' liability.

The order at special term should be reversed.

BRADY, J.—The defendants' business is to raise vessels from the water to be repaired, and to lower them again when the repairs are completed. After the vessel is raised on the defendants' dock, they charge for the *use of the dock* a certain sum per day. They hire the dock to the owners of the vessel, or persons desiring it, for the purpose of repairing, and that species of bailment

known as *locatio rei* is created. The letter under such circum-
stances is understood to warrant against all such faults and
defects as would entirely prevent the contemplated use and en-
joyment of the bailment, *or render it dangerous*, but not against
those which diminish its convenience and appropriateness for the
use designed. Story on Contracts (3d ed.), § 730, citing Story
on Bailments, § 390. The dock would be useless for the pur-
pose of repairing without staging erected thereon. The defend
ants furnished the standards to which the staging should be
attached, to the exclusion of all others. The design and object
of the dock being for public use and the defendants' benefit,
operate as an invitation to artisans and laborers to use it in the
manner devised by the defendants, and prescribing the manner
in which it shall be used, is a guaranty to *all* who so use or em-
ploy it, that it is sufficient and safe. When the mechanic is com-
pelled to labor in situations of danger, and is restricted to the
mode of averting that danger, the person so restricting him,
however remote, should be responsible for injuries arising from
the latter's negligence or carelessness. The defendants must be
regarded as having *partially erected the staging*, by supplying and
erecting the standards to which it was attached, and Simonson &
Lugar as having finished it. The part so erected by the defend-
ants was insufficient and gave way, and the plaintiff's injuries
arose from such insufficiency. The circumstance mentioned, if it
did not create a *quasi* relation of master and servant between the
defendants and plaintiff, at least, was a guaranty to the latter that
the standard was fit for the purpose and safe. If so, then there
was an implied contract between them, independently of the
public duty or obligation imposed by law on the defendants,
arising from the character of the machine hired.

For these reasons, in addition to those assigned by Judge
Ingraham, I think the order at special term should be reversed.

Order granting a new trial reversed.