J. H. YOUNG *et al. v.* AMANDA D. BRANSFORD.

1. PLEADINGS AND PRACTICE. *Damages. Burden of proof.* In an action for damages caused by the explosion of a steam boiler used for running a saw-mill, it is error to charge that, when the injury is proved to have been done by the explosion, the burden is thrown upon the defendant to show that he was guilty of no negligence, and that the accident was unavoidable.

Young v. Bransford.

2: SAME. *Same. Evidence. Negligence.* To sustain the action, the plaintiff must show ¿the want of ordinary care, skill and diligence on the part of the defendant, and the question of negligence should be left to the jury to determine upon the evidence actually introduced, it being competent for them to infer as a proposition of fact from the mere fact of explosion that there was some negligence in the management of the boiler, or some defect in its condition.

3. SAME. *Same. Same. Same.* S. being the owner of a steam boiler which he had used for years in running a saw-mill, entered into partnership with Y. and T. in erecting and operating a grist-mill with the same boiler, by the terms of which partnership the boiler was to be used on certain days of the week in operating the grist-mill for the benefit of the firm, S. reserving to himself the right to use the boiler on the other days of the week in running the saw-mill for his exclusive benefit. The boiler exploded on one of the latter days when it was being used by S. in operating the saw-mill himself. The jury found as· a fact that Y. and T. had at the time, under the partnership agreement, each an undivided fourth interest in the boiler, but there was no evidence that it was in a defective condition when the parties entered into the partnership: *Held,* that Y. & T. were not liable for an injury caused by the explosion.

FROM SMITH.

Appeal in error from the Circuit Court of Smith· county. W. N. McCONNELL, J.

J. J. TURNER and J. T. FISHER for Young.

GARDENHIRE & SON, J. A. FITE, C. R. HEAD and VERTREES & VERTREES for Bransford.

COOPER, J., delivered the opinion of the court. ·

In April, 1879, Samuel Bransford was killed by the explosion of a steam boiler used at the time in running a saw-mill. Amanda D. Bransford, widow of Samuel Bransford, brought this action for the recovery of damages for the killing of her husband against

J. H. Young, C. H. Throp and J. F. Shaw. Upon the trial the jury rendered a verdict in favor of the plaintiff against the defendants for $4,000, and defendants appealed in error. The Referees have reported in favor of reversing the judgment for error in the charge of the court upon the burden of proof. The defendant in error has excepted to the report of the Referees on this point, and the plaintiffs in error have also excepted to the report because it sustained the charge of the judge in relation to the liability of Young and Throp, two of the plaintiffs in error.

The declaration avers that on the day of the killing the defendants were the owners and managers of a steam saw and grist mill; that the engine and boiler exploded and killed her husband; that the explosion was occasioned by the engine, boiler and machinery being old, unfit for the purposes used, and not properly repaired, and by the careless and negligent manner in which it was managed and run at the time. The defendants joined in a plea of not guilty, and a special plea denying each averment of the declaration, on both of which pleas issues were joined. The defendants, Young and Throp, filed together another plea to the effect that on the day of the alleged explosion and killing, they did not own, manage or control said engine and boiler, and had no right to use, run or control them. On this plea issue was also joined.

The proof tended so show that the boiler, engine and machinery originally belonged to Shaw, who had used them for several years in running a saw-mill; that a year or two before the explosion a partnership

Young v. Bransford.

had been formed by and between Shaw, Young, Throp, and one Myers, (the last of whom had retired from the firm before the date of the accident), to erect a grist-mill, to be run by the same engine and boiler; that by the agreement Young and Throp each acquired an interest of one-fourth in the boiler and engine, and Shaw retained an interest of three-eighths, which interest was afterwards increased by the retirement of Myers by an additional eighth; that the partnership was only in running the grist-mill, Shaw retaining the exclusive ownership of, and right to run the saw-mill; that the engine and boiler not affording sufficient power to run both mills at once, it was agreed by the parties that the grist-mill should be run on Fridays and Saturdays, and in the event of a press of business, on Mondays also, and that the saw-mill should be run by Shaw, for his own benefit, on the other days of the week. Shaw was the engineer and active manager of both mills. The explosion occurred on Wednesday when the engine and boiler were being used by Shaw and his employees for running the saw-mill. There was evidence on the part of the plaintiff tending to show that the boiler was old and not in good repair. The testimony of the defendants tended to show that the boiler was made of the best of iron, in good condition, and not too old for safe use, and that the explosion was without fault on the part of those in charge. The boiler was torn into fragments. The mill was located in the country, about twenty feet from a public road. The deceased had gone into the mill only a minute or two before the explosion,

and was interchanging greeting with the employee in charge of the boiler when the accident occurred. So far as appears, he had no business which required his presence at the mill on the occasion. It seems to have been a favorite place of resort for him.

His Honor, the trial judge, said to the jury: " When the killing is proved to have been done by the explosion of the defendants' boiler, the burden is thrown upon them to show that they were guilty of no negligence, and that the accident was unavoidable. So that while the burden of proof is upon the plaintiff to make out her case in the first instance, when she has shown the explosion and killing, the burden then shifts upon the defendants to exonerate themselves from presumed negligence by showing that they were in fact guilty of no negligence, and upon this point, whether there is negligence or not, your verdict must turn." The Referees have reported that this charge was erroneous, and that the judgment should be reversed for the error.

The trial judge cited in support of his charge certain decisions of this court in cases involving the liability of railroad companies for injuries occasioned by negligence in running their trains. The first of these cases was where the stock of the plaintiff had been run over and killed by a railroad train in motion. Our statutes regulating the rights of parties in such cases necessarily throw upon the railroad company the burden of proving a compliance with the requirements of the statute, after it has been shown that the stock was killed by the train. But the

particular case involved a section of the law touching the competency of witnesses, which required a consideration of the common law liability of the company. And it was held to be a principle of the common law that after the plaintiff has established by evidence that his stock has been killed or injured by a moving train of a railroad company, the *onus probandi* is thrown upon the company of showing that it exercised all the care it was bound to do: *Memphis & Ohio Railroad Co.* v. *Horne*, 1 Cold., 72. This decision has been followed in similar cases of injury to persons or stock: *Nashville & Chattanooga Railroad Co.* v. *Fugett*, 3 Cold., 402; *Nashville & Chattanooga Railroad Co.* v. *Smith*, 6 Heis., 174; *Louisville & Nashville Railroad Co.* v. *Connor*, 9 Heis., 19. And the principle has been extended to a case in which a house has been burned by sparks from a moving train: *Burke* v. *Louisville & Nashville Railroad Co.*, 7 Heis., 451. The reason of the rule in these cases is that the proof which establishes the injury shows also circumstances from which some negligence or want of care may be attributed to the wrong-doer. *Res ipsa loquitur.* But the rule is different in the case of injury to a passenger on the train, or a mere trespasser trying to get on the train. It is incumbent upon the plaintiff, in such cases, to go further, and show not only the injury, but that it was the result of the negligence of the defendant: *Railroad* v. *Mitchell*, 11 Heis., 400; *Sommers* v. *Railroad Co.*, 7 Lea, 204. This might be done by showing that the injury was occasioned in a particular manner, which, in

itself, implied negligence: *Curtis* v. *Railroad Company*, 18 N. Y., 543; *Holbrook* v. *Railroad Company*, 12 N. Y., 236.

"No one," says Mr. Justice Field, "is responsible for injuries resulting from inevitable accident whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant, by his act or omission, has violated some duty incumbent upon him, which has caused the injury complained of. The cases between passengers and carriers stand upon a different footing. The contract of the carrier being to carry safely, the proof of the injury usually establishes a *prima facie* case, which the carrier must overcome. His contract is shown, *prima facie* at least, to have been violated by the injury. Outside of those cases in which a positive obligation is cast upon the carrier to perform safely a special service, the presumption is that the party has exercised such care as men of ordinary prudence and caution would exercise under similar circumstances, and if he has not, the plaintiff must prove it. * * * The rule deducible from the cases is, that the measure of care against accident which one must take to avoid responsibility, is that which a person of ordinary prudence and caution would use if his own interests were to be affected, and the whole risk were his own": *The Nitro-Glycerine Case*, 15 Wall., 524. "It is believed," says Mr. Thompson, "that it is never true, except in contractual relations, that the proof of the mere fact that the accident happened to the plaintiff, without more, will amount to

evidence of negligence on the part of the defendant."
2 Thomp. Neg., 1227. The authorities are not, however, in entire accord upon the point.

The leading case upon the liability for an injury occasioned by the explosion of a stationary steam boiler is *Spencer* v. *Campbell*, 9 Watts & Serg., 32. The action was for the value of a horse which had been driven to the defendant's steam grist-mill to get some grist, and was killed by the explosion of the boiler. The opinion of the court proceeded upon the ground that to entitle the plaintiff to recover, he was bound to show the want of ordinary care, skill and diligence. In *Losee* v. *Buchanan*, 51 N. Y., 476, the action was for damages done to the buildings of the plaintiff by the projection on to his premises by explosion of the defendant's boiler, or rather of the boiler of a corporation for making paper, of which the defendants were trustees, stockholders and agents. The decision was that where a person places a steam boiler on his premises for the purpose of carrying on a lawful business, and operates the same with care and skill, so that it is not a nuisance, he is not liable, in the absence of proof of fault or negligence on his part, for damages to his neighbor occasioned by the explosion of the boiler. The authorities bearing upon the general question of liability in such cases, and the principles of law underlying them, were ably reviewed and considered. The same conclusion was reached by the Supreme Court of New Jersey in *Marshall* v. *Wellwood*, 38 N. J. Law, 339, a similar case. In both of these cases, however, the main question was whether the de-

fendant was liable for the immediate consequences of the bursting of the steam boiler irrespective of any question as to negligence or want of skill on his part. And although they hold that there must be evidence of negligence to sustain a recovery, they do not determine the mode of proving negligence, or what shall be *prima facie* evidence of it: *Moulton* v. *St. John,* 57 N. Y., 567. In *Rose* v. *Transportation Co.,* 21 Am. L. Reg., 522, which was an action in the Circuit Court of the United States by a passenger on a steamboat for injuries caused by an explosion of the boiler, Wallace, D. J., instructed the jury: "That from the mere fact of an explosion it is competent for you to infer as a proposition of fact that there was some negligence in the management of the boiler, or some defect in its condition, for otherwise a casualty would not have occurred." In *Fay* v. *Davidson,* 13 Min., 522, which was an action by a passenger on one steamboat for injury caused by the explosion of the boiler of another steamboat, the learned judge who delivers the opinion, by way of *obiter,* says: "But irrespective of the act of. Congress, and speaking for myself alone, I am inclined to the opinion that, under the undisputed facts of this case, the explosion is *prima facie* evidence of negligence."

It is obvious from this review of the authorities that the question of the effect of the mere proof of the killing of the plaintiff's husband by the explosion of the defendants' boiler is one of grave doubt, and great importance. "Steam," it has been well said, "has come into such general use as a motive power,

Young *v.* Bransford.

not only in the operations of commerce and manufactures, but even in those of agriculture, that a rule of law making those who employ it insurers of the safety of others against damages arising from its use would not only be contrary to the analogies of the law, but would impose serious restraints upon the most necessary and beneficial industries,  Both the proprietor of machinery impelled by steam, and the engineer in charge of such machinery have the strongest motives for watching over its safety.  The property of the one and the life of the other depend upon constant vigilance in this regard.  These motives will, ordinarily, secure that degree of skill and attention which the safety of the public demands, without the aid of a rule making the proprietor liable, in any event, for damages from an explosion": 1 Thomp. Neg., 112.  If, in the language of the trial judge in the case before us, "when the killing is proved to have been done by the explosion of the defendants' boiler, the burden is thrown upon them to show that they were guilty of no negligence, and that the accident was unavoidable," the owners of the boiler would be virtually held as insurers of the safety of others against damages arising from its use.  At the same time, the fact there was an explosion, which is not an ordinary incident of the use of a steam boiler, ought to have some weight, inasmuch as it may be out of the power of the aggrieved party in some instances to prove any more.  The reasonable rule would seem to be that laid down by Judge Wallace as above, "that from the mere fact of an explosion it is competent for the jury to infer as

16—VOL. 12.

a proposition of fact that there was some negligence in the management of the boiler, or some defect in its condition." It ought not to have the weight of a conclusive presumption, either of law or fact, so as to compel the defendants, in order to avoid liability, to prove affirmatively "that they were guilty of no negligence, and that the accident was unavoidable." For the defendants might in some instances, as where the engineer and other employees were killed, be unable to make any positive proof. At most the question of negligence should be left to the jury to determine upon the evidence actually introduced: *Sommers* v. *Railroad Company*, 7 Lea, 204, 205.

It is true, as argued by the defendant in error, that the charge commented on was unnecessary, for proof had been introduced on her behalf tending to show defects in the boilers. But the proof of the plaintiff below in that direction was so nearly balanced by the proof of the defendants, that the verdict of the jury may have turned upon the positive requirement, imposed upon the defendants by the judge's charge, to prove affirmatively the absence of negligence and that the accident was unavoidable.

It will be remembered that Shaw was originally the owner of the steam boiler and engine, and used them in running a saw-mill. He went into partnership with his co-defendants, Young and Throp, in erecting and operating a grist-mill. Young and Throp, at the time of the explosion were the owners of one undivided half of the boiler and engine as partners with Shaw, he owning the other half. By the terms of

partnership, the boiler and engine were used on certain days of the week in operating the grist-mill for the benefit of the firm.    By the agreement under which Young and Throp acquired their interest in the boiler and engine, Shaw reserved to himself the right to use the boiler and engine on certain other days in the week for the purpose of running the saw-mill for his exclusive benefit.    The explosion occurred on a day when the boiler and engine were being used by Shaw, for himself, in operating the saw-mill.    Upon this branch of the case, the court charged the jury as follows:. "If it is a part of the contract of Young and Throp that Shaw might use the boiler when not needed for grist-mill purposes to run his saw-mill, and he was so using it when the catastrophe happened, and if it was out of repair, or was not in its equipments reasonably up to all the improvements, looking to its safe use, known to the art of using boilers at the time, and the accident occurred by reason of such defect or omission to have it fully equipped, and not from the personal negligence of Shaw or his hands, then Young and Throp would be liable."

The substance of the charge, as understood by the Referees and counsel, is that the fact of being the owners of one undivided half of the engine and boiler, when the accident occurred, would make Young and Throp liable for the injury of the explosion, if the explosion was caused by the engine and boiler being out of repair or wanting in proper equipments, although Shaw was using them for his purposes under his contract with his co-defendants by which he ex-

pressly reserved to himself the right to so use them. The liability, in this view, of Young and Throp rests exclusively upon the ground that they were part owners of the property. For, of course, they would have no right to violate their contract made long before the accident, and when so far as appears the engine and boiler were in unexceptionable condition, by preventing Shaw from using them according to the terms of the stipulation. And the necessary result of the holding is that every joint owner of a machine, weapon, or instrument, liable to explode, is responsible merely because of his ownership. for all damages caused by its explosion even when rightfully employed by a co-owner exclusively for his own purposes.

The mere ownership of property does not, in the case of realty, carry with it a liability for defects resulting in injury to third persons under all circumstances. By the common law, the tenant or occupier, and not the landlord is bound, as between himself and the public, so far to keep the premises in repair that they may be safe for the public. The landlord is liable when he covenants to keep the premises in repair, or where the defect exists at the time of the lease: 1 Thomp. Neg., 317; Wh. Neg., sec. 817. The cases cited by counsel falling within the exceptions have no application to the case before us, for neither the proof nor the charge looked to the condition of the boiler and engine at the date of the contract between the defendants.

The rule in the case of bailment of machinery by one person to another, either gratuitously or for hire,

where the machine contains a defect, the result of the negligence of the bailor, and a third person is injured in consequence of the defect, is that the bailor is not liable to the injured party: *Winterbottom* v. *Wright*, 10 M. &. W., 109; *Blakemore* v. *Bristol, etc., Railroad Company*, 8 El. & Bl., 1035; *Cook* v. *New York Floating Dry Dock*, 1 Hilt., 436; 1 Thomp. Neg., 237. The right of action is confined to those who stand in the relation of contracting parties, or to cases where the injury is caused by the disregard or neglect of some obligation or duty which the party causing it owes to the party injured, or some public duty has been broken by the former.

Each tenant in common of a chattel has an equal right to the possession of the chattel, and, of course, to make use of it for all proper purposes. The co-tenant cannot sue at law for the possession, although the other owner claims and retains exclusive possession. His remedy is in equity for a sale, and division of the proceeds: *Cheek* v. *Wheatley*, 3 Sneed, 484. It would not be in accord with the analogies of the law to hold one owner liable for the possession and use of a co-owner which he could not control.

The relation of Young and Throp to the boiler and engine in question is peculiar. They became part owners thereof with the original owner, Shaw, under a special contract. This contract made them partners with Shaw in the ownership of the chattels, with the right to use them on certain days of the week, for the purposes of the partnership, and subject to the express stipulation that Shaw might use them for his own purposes on

certain other days of the week. Their ownership of one-half of the chattels was, therefore, not absolute, but conditional and subordinate to the rights reserved. They can only be considered as partners while the boiler and engine were being used for partnership purposes. While these were being used exclusively for Shaw's purposes under the contract, Young and Throp were tenants in common with Shaw. They could not control as such tenants, and, under their contract, had no legal right to control the exclusive use of their co-tenant for his own purposes. We are unable to see any principle upon which they can be held liable for an injury accruing at such times.

The report of the Referees will be modified accordingly, and the judgment of the circuit court reversed, and the cause remanded for a new trial.