Bigelow v. Reed.

———◆———

JOEL H. BIGELOW *versus* HIRAM REED.

In an action to recover damages for an injury caused by the running of the defendant's horse against the plaintiff, on the highway:—

1. The plaintiff must prove that the injury complained of was caused *solely* by fault of the defendant, or his servants;—

2. If any other cause contributed to produce the injury, the plaintiff cannot recover;—

3. If the defendant used such care in keeping and managing his team, as men of ordinary prudence do, he was not in fault;—

4. But if, through want of ordinary care, the defendant's horse escaped from him, and did the injury, the defendant is liable, although the falling of icicles frightened the horse and caused him to run away;—

5. Where the cause of the injury is one distinct act, separate and by itself, the law does not go beyond this to ascertain what was the cause that led to or incited the act;—

6. It is no defence, that the plaintiff was in a use of the highway not justified by law, provided no negligence, or want of ordinary care on his part, contributed to produce the injury.

ON EXCEPTIONS to the ruling of WALTON, J., and on

motion to set aside the verdict as being against the evidence. No question of law arose on the motion.

This was an action of the CASE for injury alleged to have been received by the plaintiff by the defendant's horse and sleigh running against him on the highway, in consequence of the negligence of the defendant, or his servants.

The plaintiff's testimony tended to prove that he was sitting in his pung in the travelled part of the street in Augusta, waiting for two acquaintances to change horses; that the defendant sent his son with his horse and sleigh to a store near by, on an errand; that the son drove up to the store, left the horse without hitching, or proper care, and that the horse ran away, and against the plaintiff's pung, threw him out and injured him.

The defendant's testimony tended to prove that, when his son left the horse, he put him in care of a suitable person, who took proper care of the horse, which was frightened by the falling of icicles from a building near by, and broke away from the person in charge of him, without his fault.

The Court was requested by defendant's counsel to instruct the jury as follows: —

1. That the plaintiff must prove that the injury complained of by him was caused *solely* by fault of the defendant, before he can recover.

2. That, if any other cause contributed to produce said injury, the plaintiff cannot recover.

3. That, if they find that the defendant used such care in keeping and managing his team as men of ordinary prudence do, he was not in fault.

4. That, if they find that the horse started because of the falling of icicles from the roof of the building, it was an inevitable accident for which defendant is not responsible.

5. And, if the falling of the icicles contributed to produce the injury, the defendant's fault was not the *sole* cause, and the plaintiff cannot recover.

6. That, if they find that the plaintiff was sitting in his pung in the travelled part of the street, for the purpose of

seeing Thompson and Stevens trade horses, or waiting for Thompson to trade horses, that would not be a lawful use of the street; —

7. But was unlawfully obstructing the street.

8. And if plaintiff was injured while in the unlawful use of the street, he cannot recover for that injury, even if they find that the defendant was in fault also.

9. That, if plaintiff was injured because of his unlawful use of the street, he cannot recover, though they find that the defendant was in fault also.

10. That, in order that plaintiff may recover in this case, he must not only be in the exercise of his lawful rights, but must use ordinary care in such exercise.

11. That standing with his team transversely, as he is described to have done, when so large a portion of the street was occupied, and leaving so small a portion unoccupied, would not be the exercise of ordinary care.

12. At least it would be strong evidence of a want of ordinary care.

13. That, if the want of ordinary care on the part of the plaintiff contributed in the least degree towards the injury complained of, he cannot recover.

The first, second, third and thirteenth requests were given, the others were not.

But the Court, among other things, instructed the jury as follows : —

It is the duty of every one to exercise due diligence to guard against injury to others ; and this rule is of universal application, applying to all men, at all times, in all places, and under all circumstances.

By due diligence is meant such diligence, as prudent men ordinarily exercise. The rule does not require the highest degree of care and prudence, but it does require that degree of diligence which prudent men ordinarily exercise.

If a person does not use this degree of diligence, he is guilty of negligence ; and, when by such negligence a person is injured, the injured party may recover of the negli-

gent party the damage he has thereby sustained. And not only is a person responsible for his own negligence, but the law sometimes holds him responsible for the negligence of others. Thus, masters are responsible for the negligence of their servants, while the servant is employed about his master's business. And this responsibility extends to servants in the second degree, — that is, to under servants employed by servants, when such employment is in the regular performance of the master's business.

The plaintiff's action is grounded upon these principles; and to entitle him to recover he must prove that his injuries were the result of negligence on the part of the defendant, or on the part of those for whose negligence the defendant is responsible.

The son testifies that he was directed by his father to go and get a bill changed; that he drove for that purpose to the store of Lincoln on State street; that he there gave his horse into the keeping of Crommett while he stepped into the store; and that Crommett actually took hold of the reins before he let go of them. This evidence tends to show proper diligence on the part of the son, if Crommett was a suitable person to take charge of a horse, and I believe it is not denied that he was. But it would not be enough that the horse was thus put into the custody of Crommett; nor would it be enough for him to take hold of the reins. It would be the duty of Crommett to guard against the horse's getting away by holding on to the reins with due diligence; and if he was negligent in this particular, and the son was at the time in the employ of the father as his servant, and Crommett was employed by the son while in the regular discharge of his father's business, the father would be responsible for Crommett's negligence.

The verdict was for the plaintiff, and the defendant excepted.

*J. Baker*, for defendant.

1. The falling of the icicles was an inevitable accident, or

at least so unusual an occurrence, that the defendant was not responsible for it; and, if this cause contributed to the injury, the plaintiff cannot recover. 1 Hilliard on Torts, 124, 129; *Hixon* v. *Lowell,* 13 Gray, 59; 2 Cush., 300; 13 Met., 55.

2. The plaintiff was in the street for an unlawful purpose; for an unreasonable time; and obstructing the street.

In such cases, he cannot recover. 1 Hil. on Torts, 171.

3. The plaintiff was not in the use of ordinary care; and the eleventh and twelfth requested instructions should have been given.

4. The presiding Judge undertook to instruct the jury what state of facts would constitute ordinary care, on the part of the defendant's servant in holding the horse. But that was a question exclusively for the jury.

*J. M. Meserve,* for plaintiff.

The opinion of the Court was drawn up by

KENT, J. — The case, most strongly stated for the defendant, so far as the rulings and refusals of the Judge presiding in relation to the fourth and fifth requests, are in question, is this: — The defendant's son and servant was sent by him to a store in Augusta, to get a bill for ten dollars changed by the occupant. He went with a horse and sleigh, and, on arriving near the door of the store, he alighted from the sleigh, and requested one Crommett, who was standing near, to hold his horse whilst he got the bill changed; Crommett took hold of the rein by the bit, before the son left; and the son then went into the store; *that,* just after this, icicles fell from the eaves of the building on to the awning and sidewalk; *that* the horse instantly started, and broke away from Crommett, who was still holding him by the head, close up to the bit; *that* the horse then run furiously, without a driver, until he struck the plaintiff's sleigh and person, and caused the damage for which this suit is brought.

The fourth and fifth requested instructions were as follows : —

4. "That if they find that the horse started because' of the falling of icicles from the roof of the building, it was an inevitable accident, for which the defendant is not responsible.

5. "And if the falling of the icicles contributed to produce the injury, the defendant's fault was not the *sole* cause, and the plaintiff cannot recover."

The only ground, on which the defendant can be held liable, is by proof that the injury was occasioned by the fault and negligence of the defendant or of his servants. It is not enough to show that the injury was caused by the defendant's horse, running in a furious manner in a public street against the plaintiff, he being in the exercise of ordinary care. It must be also shown that the defendant had been guilty of *negligence*, by which the horse came into that condition of unregulated and uncontrolled and dangerous rapidity. *Negligence* is the essential point to be determined.

The Judge presiding gave to the jury the three first requested instructions, which were in substance; that the plaintiff must prove that the injury complained of was caused *solely* by fault of the defendant; that, if any other cause contributed to produce the injury, the plaintiff cannot recover; that, if the defendant used such care in keeping and managing his team as men of ordinary prudence do, he was not in fault.

The defendant complains because the Judge did not, as a matter of law, instruct the jury that the falling of the icicles was an *inevitable accident*, for which the defendant was not responsible. This request is at best but an abstract proposition, and disconnected from any other would seem to be immaterial. But the Court was not called upon to determine, as a matter of law, that the falling of the icicles, at that time and place, was an *inevitable* accident. At most it was a question of fact, if material to the issue.

Bigelow *v.* Reed.

But the defendant relies more particularly upon the request contained in his fifth proposition.

What the exact ruling of the Judge, on this and other points in the case was, does not appear in the exceptions. A small part, apparently, of his charge is given, but it clearly appears, that there were many instructions given which are not set out in the bill. We are not to assume that *no* instructions on these points were given, but rather that those given were unexceptionable, if the excepting party had not a right to have the precise one requested given.

Before this point, made in the fifth request, could become at all material, the plaintiff must establish such carelessness and negligence on the part of the party holding the horse, as rendered the defendant primarily liable. The defendant says, assuming that to be so, I am excused, because the falling of the icicles alarmed the horse, and caused him to run, and thus contributed to the injury. In other words—that when a man leaves his horse, carelessly and without any proper attendant, in a public street, he is not responsible, if he can show that his horse was frightened by any other person or noise, common or uncommon, for which he was not responsible.

Undoubtedly, on the question of *care*, it may be very important to show the nature and extent of the cause which alarmed the horse, and whether it was unusual and not ordinarily to be expected, and all other matters, which go to show that, notwithstanding the injury, there was no want of ordinary prudence and caution. But assuming that, after all these facts are considered, the defendant is yet held as guilty of carelessness, can he fall back upon this "falling of the icicles," as a contributing cause of the injury?

It is a well established doctrine of the law, that, where two or more immediate causes concur in producing an injury, and the party sued is responsible for only one of those causes, and it cannot be determined which was the efficient or most efficient cause, or whether, without both, the injury

would have been done, the action cannot be maintained. But where the cause of the injury is one distinct act, separate and by itself, the law does not go beyond this, to ascertain what was the cause that led to or incited the act. The rule is—"*In jure, causa proxima non remota spectatur.*"

The law looks to the proximate—the immediate cause, and not to one even one degree removed. It is the cause, and *not the cause of the cause*, that is regarded. *Marble* v. *City of Worcester*, 4 Gray, 395.

The falling of the ice was in itself no cause of injury, directly and immediately, to the plaintiff. The proximate cause was the running of the horse against the plaintiff and his property. The alarm caused by the falling of the icicles was, perhaps, the cause of that running. But that was but a remote cause of the injury to the plaintiff, a cause of the cause. The defendant is not held responsible for the falling of the ice, but for his negligence in leaving his horse, in a condition where he might run away, if alarmed by such or any similar cause. There are many cases, where, if we do not stop at the direct or proximate cause, we may become involved " in a chain of causation, by successive links, endless." *Tisdale* v. *Norton*, 8 Met., 388.

The difficulty, in many cases, is in determining what are proximate and what are remote causes. But, in this case, it seems clear that no immediate cause operated to produce the injury but the running of the horse unguided. If a person fires a loaded gun in a street near a horse, that discharge does no injury directly to any one, but it alarms the horse and thus puts in motion a cause, which does injury. It is not the immediate, but a secondary or remote cause, which the law will not regard as a part of the proximate cause, but as one degree at least removed. If the concussion produced by the discharge of the gun had caused the icicles to fall, that discharge would have been a cause *two degrees* removed.

It seems to be well settled law in England that, if a man is guilty of carelessness " in leaving his team in a street, he

Bigelow *v*. Reed.

must take the risk of any mischief that may be done." This is the language of TINDAL, C. J., in *Illidge* v. *Goodwin*, 5 Car. & P., 190. In that case, it was testified to by two witnesses, that the horse and cart of the defendant, being left alone in the street, a person passing by struck the horse. The report states, what seems somewhat novel to us, that, during the cross-examination of the second of these witnesses, the jury interposed and said they did not believe the evidence of either, and thereupon C. J. TINDAL said, " supposing them to be speaking the truth, it does not amount to a defence," and he then added the words above quoted.

The same doctrine is recognized in *Lynch* v. *Nurdin*, 1 Ad. & E., N. R., 29.

The case of *Goodman* v. *Taylor*, 5 Car. & P., 410, is also in point. In that case, the defendant's horse was alarmed by a " Punch & Judy" show coming by, and ran and injured the plaintiff's horse. It appeared that the defendant's wife stood by the head of the horse, and he ran away and almost pulled his wife down. The Judge placed the case on the point, that this was due care, but no one suggested that " Punch & Judy" were coöperating and contributing causes. The verdict was for the plaintiff, notwithstanding the intimation of the Judge on the point of due care.

We do not think that the Judge was in error in refusing to give the requested instructions.

The next request, the sixth in the series, was—" that, if they find that the plaintiff was sitting in his pung, in the travelled part of the street, for the purpose of seeing Thompson and Stevens trade horses, or waiting for Thompson to trade horses, that would not be a lawful use of the street."

This proposition is urged as matter of law. It of course cannot be contended that it was unlawful, *per se,* for the plaintiff to be present at a horse trade. And it certainly would be a severe and, to most men, a new exposition of the law, to hold that the single fact that a man who stopped in the road for his own convenience or pleasure, although he had no

business of his own, "was in the unlawful use of the street." And this without reference to the length of time he was there, or to the width of the road, or to the fact whether he interfered in any way in the use of it by others. It is perfectly well settled, that travellers are not bound to keep in motion every instant they are on the road. It is their right to stop, temporarily, for business or pleasure, provided they do not unreasonably interfere with the rights of others, who wish to use the road. This right is recognized in our statutes, in the various provisions relating to the use of highways by travellers. The requested instruction does not contain any condition, which implies even that the plaintiff was thus interfering with the rights or wishes of others ; and, as before stated, in the absence of the actual rulings of the Judge on this point, we can only pass upon the proposition as stated in the request. This we think the Judge could not properly give as matter of law. *Dickey* v. *Telegraph Co.*, 46 Maine, 483.

The subsequent requests, on this point, are based upon the correctness of this, and must fall with it.

If, however, we give a larger scope to the request, couched in general terms, we think that, upon the facts reported, (all of which are made the *basis* of the exceptions,) it is apparent that the plaintiff was not in the unlawful use of that small portion of the street, one hundred feet wide, which he occupied, and that there was no evidence on which the requested instructions could be based. He was clearly in the lawful use of the highway.

But if he was not, so far as the State and others who might wish to use the street are concerned, yet that fact would not authorize a trespass upon him, or any injury to his person or property, by another party, who did not represent the State or such aggrieved persons.

It has often been determined, that, although a person is on the wrong side of the road, yet he may recover for any injury wantonly or, under the circumstances, carelessly inflicted. So if cattle are prohibited from running at large,

yet if one is so found, no one has a right to maim or injure it.

A plaintiff is not precluded from recovering for an injury negligently done by the defendant, by the fact that he himself has been guilty of unlawful or negligent conduct, unless he might, by the exercise of ordinary care at the time, have avoided the injury. *Welch* v. *Wesson*, 6 Gray, 505; *Morton* v. *Gloster*, 46 Maine, 520.

A case illustrating this principle is *Davis* v. *Man*, 10 Mees. & Wels., 546, where the defendant negligently drove against and killed an ass in the highway, it was held that plaintiff was liable, although the ass was fettered and was *wrongfully* there.

We consider that the last requested instruction, which was given, covered all the ground that the defendant had a right to require, in relation to the use of ordinary care on the part of the plaintiff. It was, that if the want of ordinary care on his part contributed in the *least* degree towards the injury, he could not recover.

The 11th and 12th requests had relation entirely to matters of fact, and were properly refused.

The defendant further excepts to a portion of the charge to the jury as reported. It is unquestionably true that it is the province of the jury to determine the question of care, under the instructions of the Court. If this part of the charge can be fairly construed as an authoritative declaration by the Judge, that certain facts would or would not establish the exercise of ordinary care, it might be exceptionable. But, upon a careful examination, we think it is manifest that no such absolute ruling was given. In this part of the charge, the Judge was presenting the evidence on the strongest ground assumed by the defendant, and reciting the testimony tending to show that the son was guilty of carelessness in leaving the horse with Crommett, after he had actually taken the reins, it not being denied that Crommett was a suitable person to take charge of the horse. The question then arose, whether *Crommett* exercised due care

in holding the horse. The Judge did not rule, as matter of law, that it was necessary that he should take hold of the reins, or that it would be want of due care if he did not, under all possible circumstances. But assuming, as claimed by defendant, that the evidence established the fact, that he did thus take hold of the reins, the Judge extended the rule of due care to him in that position. He did not say that the person thus holding would be guilty of want of due care, if he let the horse go, or if he did not, at all events, keep him from breaking away. He did not undertake to define to the jury what degree of care, in thus holding, would be sufficient. But he did say, that it was incumbent on him to guard the horse from escaping " by holding on to the reins *with due diligence.*" The fair interpretation of all which is, that the rule of ordinary care was applicable throughout the whole transaction, before and after the son put the horse in charge of Crommett, until he finally broke away. He left it to the jury to determine whether or not such care was used, without undertaking to declare that any one or more acts were or were not, in law, such neglect.

We discover no cause for setting aside the verdict on the motion, grounded on the allegation that it is against the weight of evidence.

*Exceptions and motion overruled.*

*Judgment on the verdict.*

APPLETON, C. J., WALTON and DICKERSON, JJ., concurred.

DAVIS, J., concurred in the result, and expressed his views upon some of the questions raised, in the following opinion: —

I concur in overruling the exceptions. And the importance of the question, with its frequent recurrence in practice, will justify me in stating my own views.

The jury were instructed, " that the plaintiff must prove that the injury complained of was caused *solely* by the fault

of the defendant; and that, if *any other cause contributed* to produce it, he could not recover." As this *general* statement necessarily embraced all the *particulars* of which it was composed, there was no reason for instructing the jury that, if *the falling of the ice* contributed to produce the injury, the plaintiff could not recover. And besides, as we shall see, a contributing cause, which is itself but one link in a *chain of causes*, does not necessarily vary the liability of the parties, or render the event the product of more than one cause, in contemplation of law.

An act that causes damage sometimes produces it *immediately*, without the intervention of any other force between it and the result. But generally it acts through other forces, one or more, which it sets in motion. And, in nearly every case of injury, the *primary cause* is removed, one degree or more, from the actual force which finally produces the damage. And it is to cases, all of which are embraced in this general statement, that the rule of law is to be applied, *that the act complained of must have been the "proximate" cause and the " sole" cause of the injury.* These terms were adopted in *Moore* v. *Abbott*, 32 Maine, 46. It is important that we have a clear idea of what is meant, in that case, and others like it, by the *sole* cause, and the *proximate* cause.

1. If the *primary* cause is a wrongful act, that is said to be the *sole* cause, though it operates through other causes which itself produces. It *alone* operates at the *inception* of that chain of forces which it sets in motion. It is not less the sole cause because it operates through other agencies produced by itself, which otherwise would have had no existence. The books abound in illustrative cases, only a few of which need be cited.

Thus, one who carelessly fires a gun in or near a public way, and thereby frightens a horse, is liable for the injury caused by such fright. *Cole* v. *Fisher*, 11 Mass., 137; *Moody* v. *Ward*, 13 Mass. 299. So one who carelessly kindles a fire upon his own land, and such fire destroys property of another upon adjacent land, is liable therefor.

*Bachelder* v. *Heagan*, 18 Maine, 32; *Barnard* v. *Poor*, 21 Pick., 388; *Clark* v. *Foot*, 8 Johns., 421. So, if one carelessly uses a steam engine that is defective, in consequence of which the boiler bursts; or a defective gas pipe, by reason of which the gas escapes; he is liable for the damage caused thereby. *Spencer* v. *Campbell*, 9 Watts & Serg., 32; *Emerson* v. *Lowell Gas L. Co.*, 3 Allen, 410.

So, also, when the *primary* cause of injury is an *inevitable accident*, operating through a chain of *dependent* causes, one who is connected with an *intermediate link* may be liable for the result. This occurs when it is his duty to *prevent the continued operation* of the cause, and he does not do it. In such a case his *negligence* is properly held to be the *sole cause* of the damage; for, with such care as he was bound to exercise, he might have prevented it. Thus, if goods in the possession of a bailee are destroyed by a flood, or a fire, with the origin of which he had no connection, if, by proper care, he could have saved them from destruction, his negligence is held to be the sole cause of the damage, and he is liable for it. *Powers* v. *Mitchell*, 3 Hill, 545; *Seymour* v. *Brown*, 19 Johns., 44; *Penobscot Boom Corp.* v. *Baker*, 16 Maine, 223; *Riddle* v. *Locks & Canals*, 7 Mass., 169.

The case at bar is clearly one of this class. A person has no right to leave his horse in a public street, unless he is securely fastened, or is in charge of some one competent to take care of him. He is bound to take care that he shall not do injury, in consequence of being frightened by anything that may occur. And, if the horse does become frightened, by an inevitable accident, and he does not prevent any damage being caused thereby, when he could have done it, by exercising ordinary care, his negligence is properly held to be the sole cause of the injury. It will be through it, and it *alone*, that the primary cause will be able to run on, and continue, to such a final result.

It will be noticed that, in both of these classes of cases, the causes, if several, are connected, and *dependent*. And it is *for this reason*, that any one who wrongfully sets the

train of causes in motion, — or, if not wrongfully set in motion, any one whose duty it is to stop it, he having the power to do it, but neglecting to exercise it, is responsible for the result.

There is another class of these cases, in which the *primary* cause is *wrongful*, but it would not have operated to produce the injury, except for the *negligence of some other party*. Whether in such a case either of the parties is liable to the person injured, or both, it is not necessary now to inquire.

But there is still another class of cases, in which *independent* causes combine to produce an injury. And whenever one of two efficient causes is not produced or set in motion *by the other*, but might have operated without it, then it can never be determined with certainty whether one would, or would not, have produced the effect without the other. *Murdock* v. *Warwick*, 4 Gray, 178 ; *Moore* v. *Abbott*, 32 Maine, 46 ; *Moulton* v. *Sanford*, ante p. 127. And therefore, whenever an *independent* cause, for the effect or continued operation of which a person is not responsible, combines with his wrongful act, or negligence, in producing an injury, he is not liable therefor. The injury cannot be apportioned; nor can it be proved that the other cause would not have produced it. *Rowell* v. *Lowell*, 7 Gray, 100 ; *Kidder* v. *Dunstable*, 7 Gray, 104 ; *Shepherd* v. *Chelsea*, 4 Allen, 113.

2. But, in a chain of *dependent* causes, the law looks only to those which are *proximate*, and not at those which are *remote*. It is often very difficult to fix the boundary between the two.

The word " proximate" seems to be used, not in the sense of *next*, but in the sense of *near*. It is the correlative of " remote." It is not confined, therefore, to the *last* motive power operating to produce an injury. It may be removed, one degree, or more, and still be a proximate cause, for the final effect of which the author is liable. Several cases of this kind have already been cited. The old distinction between *trespass* and *case* had its origin, not in the idea that

the *first* in a *chain* of causes may not be a proximate one, but in the principle that, although it was proximate, and the author of it was liable for the consequences, the *remedy* must be different. The cases do not intimate that the law will not look beyond the *last link* in the chain. In large numbers of them, it does trace back the line of cause and effect one step, or more.

Just where the liability should cease, must be determined in each case by itself. Generally, whatever is produced by a wrongful act, while it continues to operate, by itself, or through other agencies called into force by itself, it is the proximate cause of the result. But if the only effect of it is to *afford an opportunity* for some other *independent* force to operate, it is, as is sometimes said in cases of insurance, but the *occasion* of the result. Thus, if I carelessly frighten a horse, and the horse, by reason of the fright, runs away, and causes damage, I am liable therefor. But if, as a consequence of the delay caused thereby, the owner does not reach his place of business in season to perform some contract, whereby he suffers loss, I am not liable therefor. 1 Bouvier, " Cause." If a vessel is injured by perils of the sea, and in consequence of the *delay* caused thereby, is captured, it is a loss by *capture*, and the insurers are not liable if capture is excepted from the risks. *Livie* v. *Jansan*, 12 East, 648. So if a carrier wrongfully refuses to deliver goods, damages caused by a suspension of the consignee's works, though resulting from such refusal, are too remote to be recovered. *Waite* v. *Gilbert*, 10 Cush., 177. But if a vessel is disabled by a storm, and after the storm is over, in consequence of her condition, her boat is lost, the insurers are responsible for the loss of the boat, *as caused by the storm*, though they would not have been liable for it as a distinct loss. *Potter* v. *Ocean Ins. Co.*, 3 Sumner, 27.

And the same principle must be applied in determining whether the cause of an *injury* is remote, as in determining the remoteness of *damages*. " The damage to be recovered must always be *the natural and proximate consequence* of the

act complained of." 2 Greenl. Ev., § 256. But one's liability for damages, as we have seen, are never restricted to the *immediate* consequences of his wrongful act. Thus, the owners of a defective bridge, by whose negligence a horse is lost, are liable not only for the value of the horse, but for the consequent expense of medical treatment. *Watson* v. *Lisbon Bridge*, 14 Maine, 201.

In the case at bar, if the defendant had used due care, but some one had wrongfully frightened his horse, the act of such person would not have been too remote to render him liable. The negligence of the defendant is two degrees nearer the final effect upon the plaintiff; and therefore it certainly cannot be held to be *too remote* to be considered an efficient cause, for which he is liable to the party injured thereby.