## Spencer *against* Campbell.

For an injury done to the horse of a customer by the bursting of a steam-boiler at a mill, case and not trespass is the proper form of action, and it may be maintained by the owner of the horse which was at the time in the possession of another person.

The admissions of one who is jointly sued with others are competent evidence against himself.

One who is exercising a public trade or business which requires the use of a steam-engine, is responsible for any injury to another which is the consequence of its insufficiency.

ERROR to the Common Pleas of *Centre* county.

William Campbell against Samuel Spencer, William Spencer, David Spencer and Aquila Spencer, trading under the firm of Samuel Spencer & Brothers. This was an action on the case in which the plaintiff alleged that the defendants were owners and proprietors of a steam grist mill, inviting the custom of the public and for reward grinding the grain entrusted to them; that as such they were required to provide and use safe and convenient machinery for the conduct of their business, so that persons and cattle necessarily employed in conveying grists to and from the mill might receive no injury; that in disregard of this duty they procured a defective steam-boiler, and well knowing it to be defective used it; that one Samuel Hall who had procured them to grind for him, obtained from the plaintiff his mare and sent her to the mill to fetch away his grist, and that whilst she was waiting for it the defective boiler burst and killed her, whereby the plaintiff sustained damages to the value of the mare.

The second count substantially charged the defendants with negligently managing their engine, by means whereof the plaintiff was injured in his property.

The plaintiff offered in evidence the following letter from one of the defendants, William Spencer to a John Meixsell:

"Friend—We have started our engine, and are fully of opinion that the heads of the boiler will not stand to raise the steam as high as will be necessary to drive two run of stones and the machinery. The highest we have had it yet is to raise the weight hung as near the nave as possible, which is hardly sufficient to run two run of stones, and that springs the head between a quarter and a half an inch, and there is also a seam round in the head next mill where it don't appear to have been cast solid, through which the steam and water passes in different places. I have written this same day to George W. Singly to Frankstown to come and run the engine and put up the governor, and if he should

have left Frankstown and come to Blairsville, I would wish thee to send him on or let him know that we want him."

This evidence was objected to on the ground that it was the letter of one only of the defendants.   The court overruled the objection and sealed a bill of exception.

The plaintiff offered in evidence the deposition of Thomas Boyle, which was objected to by defendants on the ground that the contract for the engine was made with him, and was furnished by him and his partner Meixsell, and that the witness would therefore be liable to an action by the plaintiff Campbell; but the court overruled the objection and sealed a bill of exception.

Other points which arose in the cause grew out of exceptions to the following charge of the court:

WOODWARD, (President). — There is little ground to doubt the legal duty that was upon the defendants to provide reasonably sufficient and safe machinery for carrying on their business. This duty is on men in every branch of business, when they ask people to risk life and property in their hands and for their profit.   The transporter of passengers or property by land or water is required to have all the means and appliances necessary for a safe accomplishment of the work in hand; the innkeeper is bound to provide safe and convenient house-room for his guests and stabling for horses; and the rule applies with peculiar force to manufacturers and mechanics whose occupation brings customers and their property into the immediate vicinity of their machinery.

But whilst the defendants do not deny the alleged defectiveness of their steam-boiler, nor controvert the general principle of law applicable to all machinery, they seek to excuse themselves from liability in this case on the ground that being themselves unacquainted with steam engines, they applied to an experienced machinist for a competent and good engine for their grist mill, paid him a sound price, and received a machine which he represented to be safe and sufficient for their purposes; that he put it up for them, and instructed them in the use of it, and that they never applied all the power to the boiler which he assured them they might with safety put on; and that, until the explosion occurred, they did not know that the boiler was defective.   The plaintiff charges them with " well knowing" the defective character of the boiler; and the negligence which constitutes the tort in this case depends on this question of knowledge.   It is well known *now* and admitted that the boiler was defective; but did the defendants know this whilst they were using it?   If they did, it was the grossest negligence in them to continue to use the boiler; if they did not, the plaintiff cannot recover on the first count of his declaration.   This is a question of fact upon which the jury must pass, and their verdict will depend essentially on their finding of this fact.   If the jury had seen all that they have heard described

in respect to the appearances of the boiler whilst in use, would they, as reasonably prudent men, have accounted it unsafe?

Let them picture to their minds that boiler as described in Spencer's letter and the testimony of the witnesses, and then laying out of view all the evidence of unsoundness produced by the explosion, let them pass upon the question of the safety and sufficiency of the boiler as it appeared whilst in actual use. If in this mode the jury should satisfy themselves that they or other men of ordinary sense and prudence would have condemned that boiler as unsafe and insufficient, then the Spencers were bound in like manner to condemn it. They are men of ordinary sense and prudence: they were bound to exercise in their business reasonable diligence, discretion and judgment, and they saw and experienced all these appearances about the boiler-head which the jury have heard described. If, therefore, the conclusion of a right judgment in the premises be, that those appearances sufficiently indicated unsoundness, this conclusion must be forced upon the Spencers. We must say that they knew what other men of common sense with their opportunities for observation would have known, that the boiler was unsound and unfit for use.

If the jury should find it necessary thus to impute knowledge of the defectiveness of the engine to the defendants, they are not to be excused on account of any false security into which the representations of Meixsell, the machinist, may have betrayed them. They employed him at their own risk; they took his advice at their peril. Their customers never trusted in Meixsell; their confidence was in the Spencers. As between one of those customers and the Spencers, the opinions and assurances of Meixsell become unimportant. If the defendants chose to make his opinions the rule of their conduct in opposition to the testimony of their own senses, they have no right to visit the consequences of their folly on their innocent customers. The public repaired to their mill on the presumption that they employed all the precautions and care in conducting their business that men of ordinary prudence do commonly employ, and they were bound to know that the faith and confidence of their customers were in them, rather than in some irresponsible and unknown individual whose advice they had sought and obtained. Meixsell was undoubtedly false to the defendants, but this is their misfortune. They cannot transfer it to another innocent party who was a stranger to all that occurred between Meixsell and the defendants. They brought on the misfortune, and must therefore bear it.

The same line of observations is applicable to the plaintiff's second count, which charges the negligent management of the engine. From all the jury have heard of it, would a man of ordinary care and skill have removed the pea so far out upon the lever of the valve as Kirk says he did? If he would not, from regard to the existing appearances of the boiler-head, then the defendants

[Spencer *v.* Campbell.]

cannot justify their imprudent conduct by the rash assertions of Meixsell.

If, then, the jury find that the defendants knew, or what is the same thing, were bound to know of the unsoundness and insufficiency of their boiler, it was greatly wrong in them to persist in using it; and if the destruction of the plaintiff's mare were the consequence of their wrongful act, he is entitled to a verdict in damages equal at the least to her value. Or, if they did not know of the unsoundness, and are not to be held responsible for such knowledge, yet if they used their boiler rashly and without ordinary skill and care, it would be culpable negligence, and if this occasioned the plaintiff's loss, he would be entitled to damages on his second count.

But a point has been made by the defendants that goes to the plaintiff's right of action. The mare had been bailed to Hall, and it is said he is responsible to the plaintiff, and is the proper party to seek redress from the defendants. If the jury believe the mare was taken there to obtain a grist in the ordinary course of business, and was not unnecessarily kept there, the owner is entitled to sue for the loss of her, though his bailee took her there.

*R. C. Hale,* for plaintiffs in error.
*M'Callister,* for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J. — Most of the exceptions before us merit but a brief notice, even under the statute which imposes on us the duty of expressing an opinion on all the points which were ruled below. First, then, the admissions of a defendant are evidence against himself even when he is jointly sued; and it is just as clear that the plaintiff in this suit could not maintain an action against either Boyle, the deponent, or Meixsell his quondam partner; with neither of whom did he stand on any relation of privity. Boyle, therefore, was disinterested. It is equally clear, too, that case, and not trespass, is the proper form of action for an injury like the present.

The exceptions to the charge also are unfounded. The plaintiff certainly, or his bailee at the time of the injury possibly, might maintain an action on the case for the loss of the mare. The principle of *Ward* v. *M'Cauley,* (4 *T. R.* 490), is that trespass, founded as it is on possession, cannot be maintained by a bailor unless the bailee had the custody of the thing merely as his servant; but that trover may be maintained on the right of property without question as to the possession. That principle is an elementary one. The only material inquiry, in the case before us, regards the nature and extent of the defendant's responsibility to their customers. It is true that the judge put the responsibility of a carrier or an innkeeper as illustration, not of the degree of diligence required,

[Spencer v. Campbell.]

but of the duty which the law imposed on him to provide all the means and appliances necessary for a safe accomplishment of his business; but he put the question on the true ground as a conclusion from the whole, that of ordinary care and skill. As the defendants were bound to use reasonable diligence to ascertain the quality of their machinery in regard to safety, they were answerable certainly for gross negligence of which there was evidence. They were warned of the danger not only by others, but by their own eyes; yet they preferred to rely on the assurances of the manufacturer; and the judge was right in charging that "if they chose to make his opinion the rule of their conduct in opposition to the evidence of their own senses, they had no right to visit the consequences of their folly on their customers." To work the engine under an extraordinary head of steam, though the boiler-head had been perceptibly sprung at the lowest pressure, was an act of rashness; and it is to be remembered that they were bound. not only to use due care, but to possess a competent share of skill on the principle by which the law implies an agreement to that effect on the part of every one who undertakes to perform a business, an office, or a duty. Now it appeared that Aquila Spencer, who was attending to the engine, and for whose management of it the other defendants also are answerable, had placed the pea of the safety valve at half the length of the lever from the fulcrum, though the boiler-head had been sensibly sprung when the pea was close to the nave. It is not to be doubted, then, that the disaster which ensued is one which he was bound to prevent, and for which all are answerable.

Judgment affirmed.