Teall *v.* Barton.

------◄•►------

## TEALL *vs.* BARTON & WILLIAMS.

The defendants were engaged, under a contract with the state authorities, in removing a sunken boat from the channel of the canal, by means of a steam dredging machine, in the vicinity of the plaintiff's farm buildings; using wood for fuel, without any spark-catcher or screen upon their smoke-stack. A high wind blowing the sparks and cinders to and over the farm buildings, the defendants were notified by the plaintiff's agent or servant of the danger to said buildings ; notwithstanding which, the defendants continued to use their dredge, keeping up the fire thereon without putting on a spark-catcher, or using any extra precaution to prevent injury from fire. The buildings of the plaintiff being consumed by fire communicated to a pile of straw, by sparks ; *Held* that the defendants were guilty of carelessness and negligence, and were liable for the damages occasioned by the fire.

*Held, also,* that a question put to a witness, as to whether he considered it dangerous to use a steam-dredge without a spark-catcher, was properly overruled ; it not being a question of science or skill, and not falling within the rule relating to evidence by experts.

Teall *v.* Barton.

And that a question, to a witness, whether he had ever known any accident to happen from sparks from a dredge at the same distance from the dredge, was also properly overruled.

THIS action was brought to recover damages sustained by the plaintiff, by the destruction of his farm buildings and their contents, consisting of hay, grain, and other personal property, by fire, communicated from a steam dredge of the defendants, through the negligence of the defendants and their servants. The action was tried before a referee, who found the following facts.

That on the 8th day of November, 1856, the plaintiff was the owner and in possession of a farm situated in the town of Waterloo, in the county of Seneca and adjoining the Cayuga and Seneca canal, upon which farm were located the farm-buildings mentioned in the complaint, and which buildings then contained a large amount of hay, grain, and other personal property, and that said buildings were situated about forty rods distant from said canal. That on said 8th day of November the defendants were lawfully engaged under a contract with the proper state authorities (a copy of which contract is included in the evidence) in removing a sunken boat out of the channel of said canal at a point about forty rods south or nearly south from said farm-buildings of the plaintiff, and were using for said purpose a steam dredging machine, with wood for fuel ; that said sunken boat tended to obstruct the passage of boats, and it was necessary that it therefore should be removed, and that the use of said steam dredge was proper to accomplish that object. That a fire was kindled and steam got up upon said dredge by a servant of the defendants on the morning of said 8th day of November, about the hour of 6 o'clock, and work was commenced thereon by the servants of the defendants, and under their directions, about the hour of 7 o'clock A. M., and such work continued until between the hours of 9 and 10 o'clock and until after the firing of said farm buildings, as hereinafter stated. To that part of the findings " that

such work was continued until after the firing of said farm-buildings as hereinafter stated," the defendants excepted. That on the morning of said 8th of November one Nelson Roundy, between the hours of 6 and 7 o'clock, well knowing the condition of said buildings and their surroundings, saw live sparks and cinders blown from the smoke-pipe of said dredge of defendants up to, around, over and about the said farm buildings of the plaintiff; that thereupon he went down to said dredge of the defendants and told the night watchman on said dredge, "that when he fired up the sparks flew up there towards the building;" that the said watchman reported to the fireman what he had been told by said Roundy as to the direction of the wind and the distance that sparks were blown, and that the above was all the notice given to the servants of the defendants or any of them; that on the same morning before the fire, the said Roundy went to the village of Geneva, and in going passed very near the said dredge of the defendants while in operation, and also passed Wm. W. Williams, one of the defendants, knowing him, without giving him any notice of any danger to said buildings; that neither the plaintiff nor either of the defendants had personally any knowledge or notice of the danger of the said buildings of the plaintiff being fired from said dredge, nor did the servants of the defendants receive any other notice except as hereinbefore stated. That the smoke-stack of said dredge was about 18 feet in height, and was supplied with a movable covering known as a spark-catcher or screen, made from wire with meshes about one-fourth of an inch apart, and which spark-catcher was used for the double purpose of lessening the draft of air through the furnace of the boiler and also for obstructing the escape of sparks from the smoke-pipe; that said spark-catcher was not in use on the said 8th day of November, but had been previously detached from said smoke-stack, and was then lying unused upon the dredge; that the use of a spark-catcher upon the smoke-stack of a boiler such as was used upon this steam dredge was never known (as far

as the proof disclosed) except by the defendants on this dredge, even when such dredges were being used in close proximity to buildings during high winds, but the same had been procured by these defendants as an unusual and extraordinary precaution while at work in the basin at Geneva close to buildings, and was afterwards continued in use during portions of the time after leaving said basin. The defendants excepted to that portion of the last finding, " that the defendants afterwards continued the use of said spark-catcher during portions of the time after leaving said basin." That the said steam dredge of the defendants was in all respects well fitted for and adapted to the work being done by the defendants, and there was no want of ordinary care and prudence in the manner in which the same was operated on the day in question, except as connected with the special facts hereinafter found. That during the forenoon of the said 8th day of November there was an unusually strong wind blowing from the south, or varying but little from a south wind, and the weather for a considerable time previous had been unusually dry, creating a liability to fire from slight exposure; that about 9 o'clock in the forenoon of said 8th day of November, fire was communicated to a pile of straw near to and on the west side of said farm buildings, by sparks borne in the air from said steam dredge, and from thence communicated to said farm buildings, by means whereof said buildings and nearly their entire contents were burned and destroyed; that as early as 7 o'clock in the morning of said day the servants of said defendants in charge of said dredge were aware of the fact that the sparks from said dredge were being carried by the wind towards said buildings, and of the further fact that the force of the wind was sufficient to endanger said buildings from the sparks provided they should be borne in that direction. That sparks from said dredge were at different times during said morning, borne by said wind, in the direction of, and to and beyond said buildings, and ordinary care under these particular circumstances, on the part of the ser-

Teall *v.* Barton.

vants of said defendants, would have disclosed to them the continued danger of said buildings from such cause, while the dredge was in operation, from the time of the first kindling of the fire until the time of the burning of said buildings. The defendants excepted to the last finding of facts and to each and every part thereof, and to each and every separate particular fact therein stated. That notwithstanding the above facts and circumstances, the servants of the defendants continued to and did use said dredge in the usual and ordinary manner, without any unusual or extraordinary precaution to prevent injury to said buildings, and without putting on said spark-catcher which lay upon the dredge, or stationing any person to watch said premises and to guard against injury from fire, or in any unusual manner endeavoring to guard against the escape of said sparks or injury therefrom. To this finding the defendants excepted, also. That the said Roundy with his knowledge of the danger as hereinbefore stated, after seeing said danger, left the premises and buildings thus exposed, to his knowledge, and did not return thereto until after the fire. That the property of the plaintiff, particularly specified by the referee, was destroyed by said fire and wholly lost to the plaintiff, being portions of the property mentioned in the complaint; and that such property was of the total value of $1648. To which finding as to the quantity and value of each portion or article of said property the defendants excepted.

From the foregoing facts the referee found as conclusions of law : *First.* That by reason of the facts hereinbefore stated, the agents and servants of the defendants, who were in charge of said dredge and operating the same on the morning in question, were bound to have taken and exercised more than ordinary care and prudence, and a greater degree of care and prudence than they did in fact exercise as hereinbefore stated ; to wit, a degree of care and prudence corresponding to the increased danger to said buildings and personal property arising from the force and direction of the wind, and the dry

condition of said buildings and surroundings, and that from the omission of the agents and servants of said defendants to exercise such increased degree of care and prudence, they were guilty of such carelessness and negligence in the premises, that the said defendants are liable for the damages occasioned thereby as hereinbefore stated, amounting at the time of said fire to the sum of $1648. *Second.* That on account of the said facts or any or all of them, the plaintiff or his servants or agents, or any of them, were not guilty of any negligence in the premises that in any way contributed to the injury done to the plaintiff's property or any portion of it, but that on the contrary the plaintiff and his said servants, and each of them, exercised all the care and prudence required of them, or each of them respectively in the premises. That the defendants should pay interest upon said sum of $1648, from the time of the commencement of this action. And that the plaintiff was entitled to judgment against the defendants for the sum of $2012.66, with interest thereon from the date of the report, and costs.

The defendants excepted to the above conclusions of law, and appealed from the judgment.

*Dusinberre & McDonald*, for the appellants.

*T. R. Strong*, for the respondent.

*By the Court*, JOHNSON, J. The evidence in the case seems to be abundantly sufficient to warrant the finding, by the referee, of the fact that the fire was communicated to the plaintiff's buildings, from the steam dredge of the defendants, and that the defendants, upon the occasion and under the circumstances, were guilty of negligence in the use of the fire upon the dredge, as respects such buildings.

There is no ground furnished by the evidence for claiming that either the plaintiff or his servants, by any act or omission on their part, contributed in any degree to the setting

Teall *v.* Barton.

the buildings on fire.   They had nothing to do with the pro-
duction of the fire, or the wind by which it was carried to the
buildings, and had no control over either.   Notice was given
on behalf of the plaintiff, by his agent or servant, to the per-
sons in charge of the fire, of the danger to the buildings.
This was all the plaintiff could do under the circumstances.
He had no right to go and extinguish the fire.   Certainly,
after the notice, if not before, the continuance of the fire, by
the defendants, under the circumstances was negligent and
wrongful; and it does not lie with them to say that the
plaintiff might by constant watchfulness and vigilance have
avoided the injurious consequences of their wrongful acts.
If he had contributed in any way to setting the buildings on
fire, such act, on his part, would have been a complete answer
to the action.   But nothing of this kind can be pretended.
The most that can be said is, that the plaintiff did not exer-
cise the necessary watchfulness and skill to ward off the
unlawful blow.   And this is no answer, either in bar or in
mitigation.   It follows that the defendants are liable for all
the damages occasioned by the fire, and that the judgment
must be affirmed, unless there was some erroneous ruling on
the trial, against the defendants, to which exception was duly
taken.

The question to the witness Wright, as to whether he con-
sidered it dangerous to use the dredge without a spark-catcher,
was properly overruled.   It was the very issue to be tried and
determined by the referee upon all the evidence.   This, had
it been allowed, would have put the witness in the place of
the referee in respect to the very matter to be passed upon.
Most clearly it was no question of science, or unusual skill,
and did not fall within the rule relating to evidence by experts.

The question to the same witness, whether he had ever
known any accident to happen from sparks from a dredge, at
the same distance from the dredge, was properly overruled.
The evidence proposed by it was wholly irrelevant and imma-
terial, as it did not embrace all the circumstances and condi-

tions involved in the present case. At best it would have been the merest negative testimony; and beside, there was no exception to the ruling.

The question to the witness Roundy, whether he knew what boys the plaintiff referred to, was, I think, properly overruled. What persons the plaintiff referred to in his conversation could only be known from what he said. The witness had just stated that in the first conversation the plaintiff " did not say what boys" he had spoken of. It was in reference to this statement of the witness, that the question was asked whether he knew what boys the plaintiff referred to. It is difficult to see any materiality or pertinency in this inquiry. But if there was, it was manifestly calling for the mere conjecture of the witness, or for an inference which it was the province of the referee alone to draw.

These are the only exceptions now noticed or insisted upon, by the defendants, to the rulings upon the trial, and I think neither of them is well taken.

The judgment must therefore be affirmed.

[MONROE GENERAL TERM, September 7, 1863. *E. Darwin Smith, J. C. Smith* and *Johnson,* Justices.]