Harvey Losee, Respondent, *v.* Coe S. Buchanan et al., Appellants.

Where one places a steam boiler upon his premises and operates the same with care and skill, so that it is no nuisance, in the absence of proof of fault or negligence upon his part, he is not liable for damages to his neighbor occasioned by the explosion of the boiler.

If the explosion was caused by a defect in the manufacture of the boiler, he is not liable in the absence of proof that such defect was known to him or was discoverable upon examination, or by the application of known tests.

Upon a trial of an action for damages occasioned by such an explosion, the fact that the boiler was purchased of reputable manufacturers is proper to be considered as tending to justify its use.

The authorities upon the questions of trespass and negligence, collated and discussed. The case of *Hay* v. *The Cohoes Company* (2 N. Y., 159) distinguished, and *Fletcher* v. *Ryland* (11 Exch. [Law R.], 265, affirmed; 3 H. L. [Law R.], 330), questioned.

(Argued October 2, 1872; decided January term, 1873.)

Appeal by defendants, Coe S. Buchanan and Daniel A. Bullard, from an order of the General Term of the Supreme Court in the fourth judicial district, reversing a judgment entered in their favor upon a verdict. (Reported below, 61 Barb., 86.)

The action was brought to recover damages occasioned by the explosion of a steam boiler, while the same was owned and being used by the Saratoga Paper Company, at their mill, situated in the village of Schuylerville, Saratoga county. The boiler exploded on the 13th day of February, 1864, by means whereof it was projected and thrown on to the plaintiff's premises, and through several of his buildings, thereby injuring and damaging the same, and destroying personal property therein.

Buchanan and Bullard were joined with the paper company as defendants in the action, on the ground that they were trustees, stockholders and agents of the corporation, and superintending its business as such, and therefore jointly liable with the company in the action. The Clutes, who manufactured the boiler, were also made defendants, on the ground

that they made it in a negligent manner, in consequence of which negligence the boiler exploded.

The .case was twice tried. Upon the first trial the complaint was dismissed as to the Clutes, and a verdict rendered against the other defendants for $3,420.

The General Term set aside the verdict and granted a new trial, on the ground that the judge at the circuit erred in excluding evidence to show that the defendants were not guilty of any negligence in procuring or in the use of the boiler in question.

Upon the second trial (reported in 42 How., 385) a verdict was rendered against the paper company for $2,703.36 damages, and in favor of the defendants Buchanan and Bullard. The plaintiff moved for a new trial on the minutes of the judge, as to the defendants Buchanan and Bullard; the motion was denied, and judgment entered on the verdict in favor of Buchanan and Bullard.

Further facts appear in the opinion.

*E. F. Bullard* for the appellant Buchanan. Defendants had a right to use steam on their premises, and are not liable for any consequential injury therefrom, unless they were guilty of negligence. (8 J. R., 421; *Radcliff's Ex'rs* v. *Mayor, etc.*, 4 Comst., 195; *Fero* v. *Buff., etc., R. R.*, 22 N. Y., 209, 212; *Rood* v. *N. and E. R. R.*, 18 Barb., 80, 84; *Ryan* v. *N. Y. C. R. R.*, 35 N. Y., 210; *Sheldon* v. *Sherman*, 42 id., 485; *Bedell* v. *L. I. R. R.*, 44 id., 367.) Buchanan as a mere trustee was not necessarily liable for the acts of the corporation or its other agents. (Ang. & Ames on Corp., 302; *Blake* v. *Ferris*, 1 Seld., 48; 12 Ad. & El.; *In re Utica, etc., R. R. Co.*, 56 Barb., 460; *Hume* v. *Mayor, etc., City of New York*, 47 N. Y., 639.)

*John H. Reynolds* for the appellant Bullard. The portions of the charge excepted to are to be read with the residue, and so read they are correct. (18 N. Y., 534; 16 N. Y., 407; 35 id., 210.) It was not error for the court to

express an opinion upon questions of fact. (10 N. Y., 207.)

*A. Pond* for the respondent. Proof of negligence was not necessary to establish defendants' liability, and proof that there was no negligence is inadmissible. (*Farrand* v. *Marshall*, 21 Barb., 409, 419; *Hay* v. *Cohoes Co.*, 3 id., 42; 2 Comst., 161; *Tremain* v. *Same*, id., 163; approved in *Radcliff's Ex'rs* v. *Mayor*, 4 id., 199; *Selden* v. *Del. and Hud. Canal Co.*, 24 id., 362; *McKeon* v. *See*, 4 Rob., 449; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y., 47; *Pixley* v. *Clark*, 35 id., 523; *Lewis* v. *McMillen*, 41 id., 428, 434; *Phelps* v. *Wait*, 30 id., 78; *Suydam* v. *Moore*, 8 Barb., 358, 360; *Judson* v. *Cook*, 11 id., 642; *Montford* v. *Hughes*, 3 E. D. S., 591; *Hardrop* v. *Gallagher*, 2 id., 523.) Defendants were bound to know that the boilers were safe before using them, and for failing in that respect are liable irrespective of all questions of negligence. (*Dygert* v. *Bradley*, 8 Wend., 469.)

Earl, C. Upon the first trial of this action, the presiding judge dismissed the complaint as against the defendants Clute, who manufactured the engine, and held that the other defendants were liable irrespective of negligence, and excluded all evidence to show that they were not guilty of negligence. For this error, upon appeal to the General Term, the judgment was reversed and new trial granted, the court holding that the defendants could be made liable only by proof against them of negligence. Upon the second trial, the presiding judge held in accordance with the law as thus laid down by the General Term, and upon the question of negligence the jury decided against the Saratoga Paper Company and in favor of the other two defendants. The plaintiff claimed, as he did upon the first trial, that the defendants were liable without the proof of any negligence, and requested the justice so to rule, and the refusal of the justice to comply with this request raises the principal question for our consideration upon this appeal.

Upon the last appeal, the majority of the court held the law to be as it had been held upon the first appeal, but a new trial was granted for certain alleged errors in the charge of the justice, which will hereafter be considered.

The claim on the part of the plaintiff is, that the casting of the boiler upon his premises by the explosion was a direct trespass upon his right to the undisturbed possession and occupation of his premises, and that the defendants are liable just as they would have been for any other wrongful entry and trespass upon his premises.

I do not believe this claim to be well founded, and I will briefly examine the authorities upon which mainly an attempt is made to sustain it.

In *Farrand* v. *Marshall* (21 Barb., 409) it was held that a man may dig on his own land, but not so near that of his neighbor as to cause the land of the latter to fall into his pit, thus transferring a portion of another man's land to his own. This is upon the principle that every man has the natural right to the use of his land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots. He has a right to the support of the adjoining soil, and to that extent has an easement in his neighbor's soil, and when the soil is removed his easement is directly interfered with. When one adjoining owner thus removes the soil, he is not doing simply what he may with his own, but he is interfering with the right which his neighbor has in the same soil. This rule, however, as stated by Judge BRONSON in *Radcliff's Executors* v. *Mayor*, *etc.*, *of Brooklyn* (4 Comst., 203), must undoubtedly be some-what modified in its application to cities and villages. In *Hay* v. *The Cohoes Company* (2 Comst., 159), the defendant, a corporation, dug a canal upon its own land for the pur-poses authorized by its charter. In so doing it was neces-sary to blast rocks with gunpowder, and the fragments were thrown against and injured the plaintiff's dwelling upon lands adjoining. It was held that the defendant was liable for the injury, although no negligence or want of skill in execut-ing the work was alleged or proved. This decision was well

supported by the clearest principles. The acts of the defendant in casting the rocks upon plaintiff's premises were direct and immediate. The damage was the necessary consequence of just what the defendant was doing, and it was just as much liable as if it had caused the rocks to be taken by hand, or any other means, and thrown directly upon plaintiff's land. This is far from an authority for holding that the defendants, who placed a steam boiler upon their lands, and operated the same with care and skill, should be liable for the damages caused by the explosion, without their fault or any direct or immediate act of theirs. It is true that Judge Gardner, in writing the opinion of the court, lays down broadly the principle that " every individual is entitled to the undisturbed possession and lawful enjoyment of his own property," citing the maxim *sic utero tuo*, etc. But this principle, as well as the maxim, as will be seen, has many exceptions and limitations, made necessary by the exigencies of business and society.

In *Bellinger* v. *The New York C. R. R. Co.* (23 N. Y., 47), it was decided that where one interferes with the current of a running stream, and causes damage to those who are entitled to have the water flow in its natural channel, but such interference is in pursuance of legislative authority granted for the purpose of constructing a work of public utility, upon making compensation, he is liable only for such injury as results from the want of due skill and care in so arranging the necessary works as to avoid any danger reasonably to be anticipated from the habits of the stream and its liability to floods. Judge Denio, in his opinion, referring to the maxim *aqua currit et debet currere*, says, it " absolutely prohibits an individual from interfering with the natural flow of water to the prejudice of another riparian owner upon any pretence, and subjects him to damages at the suit of any party injured without regard to any question of negligence or want of care." The liability in such cases is based upon the principle that the interference is an immediate and direct violation of the right of the other riparian owners

to have the water flow in its natural channel. No one has an absolute property in the water of a running stream. He may use it, but he must not, by his use of it, interfere with the equal right which other riparian owners have also to use it, and have it flow in its natural way in its natural channel.

In *Pixley* v. *Clark* (35 N. Y., 520) it was held, that if one raises the water in a natural stream above its natural banks, and to prevent its overflow constructs embankments which answer the purpose perfectly, but by the pressure of the water upon the natural banks of the stream percolation takes place so as to drain the adjoining lands of another, an action will lie for the damages occasioned thereby; and that it matters not whether the damage is occasioned by the overflow of or the percolation through the natural banks, so long as the result is occasioned by an improper interference with the natural flow of the stream. This decision was an application of the maxim *aqua currit et debet currere* to the facts of that case. It was held that the liability was the same whether the water was dammed up and caused to overflow or to percolate through the banks of the stream. It was a case of flooding lands by damming up the water of a stream, and the liability of a wrong-doer in such a case has never been disputed.

In the case of *Selden* v. *The Delaware and Hudson Canal Co.* (24 Barb., 362) it was held that the defendant had the power, under its charter, to enlarge its canal; but that, though it possessed this power, and upon making compensation therefor to take private property for that purpose, it was liable to remunerate individuals in damages for any injuries they might sustain as the consequence of such improvement; and that, if by means of the enlargement, a lawful act in itself, the lands of an individual were inundated, even though the work may have been performed with all reasonable care and skill, it was a legal injury, for which the owner was entitled to redress. It may well be doubted if this decision can stand in view of the principles laid down in the case of *Bellinger* v. *The New York Central Railroad Company* (*supra*). Within the principles of that case, if the Delaware

and Hudson Canal Company exercised, a power conferred
upon it by law in a lawful and proper manner, it could not
be held liable for the consequential damages necessarily
occasioned to the owners of adjoining lands. But if we
assume, as was assumed at the General Term in that case,
that the defendant did not have the protection of the law for
the damages which it occasioned, then it was clearly liable.
Its acts were necessarily and directly injurious to the plain-
tiff. It kept the water in its canal when it knew that the
necessary consequence was to flood the plaintiff's premises.
The damage to plaintiff was not accidental, but continuous,
direct and necessary. In such a case the wrong-doer must be
held to have intended the consequence of his acts, and must
be treated like one keeping upon his premises a nuisance doing
constant damage to his neighbor's property.

In the case of *McKeon* v. *Lee* (4 Rob. Superior Court R.,
449) it was held, that the defendant had no right to operate a
steam engine and other machinery upon his premises so as to
cause the vibration and shaking of plaintiff's adjoining build-
ings to such an extent as to endanger and injure them. This
case was decided upon the law of nuisances. It was held that
the engine and machinery, in the mode in which they were
operated, were a nuisance, and the decision has been affirmed at
this term of this court.[*] The decision in this case, and in
scores of similar cases to be found in the books, is far from an
authority that one should be held liable for the accidental
explosion of a steam boiler which was in no sense a nuisance.
We are also cited to a class of cases holding the owners of
animals responsible for injuries done by them. There is sup-
posed to be a difference as to responsibility between animals
*mansuetæ naturae* and *ferae naturae*. As to the former, in
which there can be an absolute right of property, the owner
is bound at common law to take care that they do not stray
upon the lands of another, and he is liable for any trespass
they may commit, and it is altogether immaterial whether
their escape is purely accidental or due to negligence. As to

[*] *Post, p. 494.*

the latter, which are of a fierce nature, the owner is bound to take care of them and keep them under control, so that they can do no injury.   But the liability in each case is upon the same principle.   The former have a known, natural disposition to stray, and hence the owner knowing this disposition is supposed to be in fault if he do not restrain them and keep them under control.   The latter are known to be fierce, savage and dangerous, and their nature is known to their owner, and hence the owner for the same reason is bound to keep them under control.   As to the former, the owner is not responsible for such injuries as they are not accustomed to do, by the exercise of vicious propensities which they do not usually have, unless it can be shown that he has knowledge of the vicious habit and propensity.   As to all animals, the owner can usually restrain and keep them under control, and if he will keep them he must do so.   If he does not, he is responsible for any damage which their well-known disposition leads them to commit.   I believe the liability to be based upon the fault which the law attributes to him, and no further actual negligence need be proved than the fact that they are at large unrestrained.   But if I am mistaken as to the true basis of liability in such cases, the body of laws in reference to live animals, which is supposed to be just and wise, considering the nature of the animals and the mutual rights and interests of the owners and others, does not furnish analogies absolutely controlling in reference to inanimate property.

Blackstone (vol. 3, p. 209) says, " that whenever an act is directly and immediately injurious to the person or property of another, and therefore necessarily accompanied with some force, an action of trespass *vi et armis* will lie ;" for " the right of *meum* and *tuum* or property in lands being once established, it follows as a necessary consequence that this right must be exclusive; that is, that the owner may retain to himself the sole use and occupation of his soil.   Every entry, therefore, thereon without the owner's leave, and especially contrary to his express order, is a trespass or trans-

gression." The learned author was here laying down the distinction between an action of trespass and trespass on the case, and asserting the rule that in the former action the injury must be direct and immediate, and accompanied with some force, whereas in the latter action it could be indirect and consequential. He was also manifestly speaking of a direct entrance by one upon the lands of another. He was laying down a general rule that every unauthorized entrance upon the land of another is a trespass. This was sufficiently accurate for the enunciation of a general rule. Judges and legal writers do not always find it convenient, practicable or important, in laying down general rules, to specify all the limitations and exceptions to such rules. The rule, as thus announced, has many exceptions, even when one makes a personal entry upon the lands of another. I may enter my neighbor's close to succor his beast whose life is in danger; to prevent his beasts from being stolen or to prevent his grain from being consumed or spoiled by cattle; or to carry away my tree which has been blown down upon his land, or to pick up my apples which have fallen from my trees upon his land, or to take my personal property which another has wrongfully taken and placed there, or to escape from one who threatens my life. (Bacon's Abridgment, Trespass, F.) Other illustrations will be given hereafter.

By becoming a member of civilized society, I am compelled to give up many of my natural rights, but I receive more than a compensation from the surrender by every other man of the same rights, and the security, advantage and protection which the laws give me. So, too, the general rules that I may have the exclusive and undisturbed use and possession of my real estate, and that I must so use my real estate as not to injure my neighbor, are much modified by the exigencies of the social state. We must have factories, machinery, dams, canals and railroads. They are demanded by the manifold wants of mankind, and lay at the basis of all our civilization. If I have any of these upon my lands, and they are not a nuisance and are not so managed as to become such, I am not

responsible for any damage they accidentally and unavoidably do my neighbor.    He receives his compensation for such damage by the general good, in which he shares, and the right' which he has to place the same things upon his lands.    I may not place or keep a nuisance upon my land to the damage of my neighbor, and I have my compensation for the surrender of this right to use my own as I will by the similar restriction imposed upon my neighbor for my benefit.    I hold my property subject to the risk that it may be unavoidably or accidentally injured by those who live near me; and as I move about upon the public highways and in all places where other persons may lawfully be, I take the risk of being accidentally injured in my person by them without fault on their part. Most of the rights of property, as well as of person, in the social state, are not absolute but relative, and they must be so arranged and modified, not unnecessarily infringing upon natural rights, as upon the whole to promote the general welfare.

I have so far found no authorities and no principles which fairly sustain the broad claim made by the plaintiff, that the defendants are liable in this action without fault or negligence on their part to which the explosion of the boiler could be attributed.

But our attention is called to a recent English case, decided in the Exchequer Chamber, which seems to uphold the claim made.    In the case of *Fletcher* v. *Rylands* (1 Exchequer, 265, Law Reports) the defendants constructed a reservoir on land separated from the plaintiff's colliery by intervening land. Mines, under the site of the reservoir and under part of the intervening land, had been formerly worked; and the plaintiff had, by workings lawfully made in his own colliery and in the intervening land, opened an underground communication between his colliery and the old workings under the reservoir.    It was not known to the defendants, nor to any person employed by them in the construction of the reservoir, that such communication existed, or that there were any old workings under the site of the reservoir, and the defend-

ants were not personally guilty of any negligence; but, in fact, the reservoir was constructed over five old shafts, leading down to the workings. On the reservoir being filled, the water burst down these shafts and flowed, by the underground communication, into the plaintiff's mines. It was held, reversing the judgment of the Court of Exchequer, that the defendants were liable for the damage so caused, upon the broad doctrine that one who, for his own purposes, brings upon his land, and collects and keeps there, anything likely to do mischief if it escapes, must keep it at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. Mr. Justice BLACKBURN, writing the opinion of the court, says: " The question of law therefore arises, what is the obligation which the law casts on a person who, like the defendants, lawfully brings on his land something which, though harmless whilst it remains there, will naturally do mischief if it escape out of his land? It is agreed on all hands that he must take care to keep in that which he has brought on the land and keeps there, in order that it may not escape and damage his neighbors; but the question arises whether the duty which the law casts upon him, under such circumstances, is an absolute duty to keep it in at his peril, or is, as the majority of the Court of Exchequer have thought, merely a duty to take all reasonable and prudent precautions in order to keep it in, but no more;" and he reaches the conclusion that it is an absolute duty, and that the liability for damage from the escape attaches without any proof of negligence. This conclusion is reached by the learned judge mainly by applying to the case the same rule of liability to which owners are subjected by the escape of their live animals. As I have shown above, the rules of law applicable to live animals should not be applied to inanimate property. That case was appealed to the House of Lords and affirmed (3 H. L. [Law Rep.], 330), and was followed in *Smith* v. *Fletcher* (20 W. R., 987).

It is sufficient, however, to say that the law, as laid down

in those cases, is in direct conflict with the law as settled in this country. Here, if one builds a dam upon his own premises and thus holds back and accumulates the water for his benefit, or if he brings water upon his premises into a reservoir, in case the dam or the banks of the reservoir give away and the lands of a neighbor are thus flooded, he is not liable for the damage without proof of some fault or negligence on his part. (Angell on Water-courses, § 336; *Taphan* v. *Curtis*, 5 Vt., 371; *Todd* v. *Cochell*, 17 Cal., 97; *Everett* v. *Hydraulic, etc., Co.*, 23 id., 225; *Shrewsbury* v. *Smith*, 12 Cushing, 177; *Livingston* v. *Adams*, 8 Cowen, 175; *Bailey* v. *Mayor, etc., of New York*, 3 Hill, 531; S. C., 2 Denio, 433; *Pixley* v. *Clark*, 35 N. Y., 520, 524; *Sheldon* v. *Sherman*, 42 id., 484.)

The true rule is laid down in the case of *Livingston* v. *Adams* as follows: "Where one builds a mill-dam upon a proper model, and the work is well and substantially done, he is not liable to an action though it break away, in consequence of which his neighbor's dam and mill below are destroyed. Negligence should be shown in order to make him liable."

In conflict with the rule as laid down in the English cases is a class of cases in reference to damage from fire communicated from the adjoining premises. Fire, like water or steam, is likely to produce mischief if it escapes and goes beyond control; and yet it has never been held in this country that one building a fire upon his own premises can be made liable if it escapes upon his neighbor's premises and does him damage without proof of negligence. (*Clark* v. *Foot*, 8 J. R., 422; *Stuart* v. *Hawley*, 22 Barb., 619; *Calkins* v. *Barger*, 44 id., 424; *Lansing* v. *Stone*, 37 id., 15; *Barnard* v. *Poor*, 21 Pick., 378; *Tourtellot* v. *Rosebrook*, 11 Metcalf, 460; *Batchelder* v. *Heagan*, 18 Maine, 32.) The rule, as laid down in *Clark* v. *Foot*, is as follows: "If A. sets fire to his own fallow ground, as he may lawfully do, which communicates to and fires the woodland of B., his neighbor, no action lies against A. unless there was some negligence or miscon-

duct in him or his servant." And this is the rule throughout this country except where it has been modified by statute. *Tourtellot* v. *Rosebrook* was an action to recover damages caused by a fire communicated to the plaintiff's land from a coal-pit which the defendant lawfully set on fire upon his own land, and it was held that the burden was on the plaintiff to prove negligence on the part of the defendant.

In *Hinds* v. *Barton* (25 N. Y., 544), and *Teall* v. *Barton* (40 Barb., 137), sparks were emitted from a steam dredge used upon the Erie canal, and they set fire to neighboring buildings, and although the sparks were thrown directly upon the buildings it was held that the defendant could be made liable only by proof of negligence. In *Cook* v. *The Champlain Transportation Co.* (1 Denio, 91), the buildings of the plaintiff were fired by sparks thrown thereon from defendant's steamboat upon Lake Champlain, and it was held that the defendant could be made liable only by proof of negligence. All these cases and the class of cases to which they belong are in conflict with the rule as claimed by the plaintiff. A man may build a fire in his house or his steam boiler, and he does not become liable without proof of negligence if sparks accidentally pass directly from his chimney or smoke-stack to the buildings of his neighbor. The maxim of *sic utere tuo,* *etc.*, only requires, in such a case the exercise of adequate skill and care.

The same rule applies to injuries to the person. No one in such case is made liable without some fault or negligence on his part, however serious the injury may be which he may accidentally cause; and there can be no reason for holding one liable for accidental injuries to property when he is exempt from liability for such injuries to the person. It is settled in numerous cases that if one driving along a highway accidentally injures another he is not liable without proof of negligence. (*Center* v. *Finney*, 17 Barb., 94; *Hammock* v. *White*, 103 Eng. Com. Law, 587.)

In *Hussey* v. *Dunlap*, Lalor's Supplement, 193), the action was for throwing a stone at the plaintiff's daughter and putting

out her eye.   It did not appear that the injury was inflicted by design or carelessness, but did appear that it was accidental, and the court held that the plaintiff could not recover, laying down the broad rule that no liability results from the commission of an act arising from inevitable accident, or which ordinary human care and foresight could not guard against. In *Dygert* v. *Bradley* (8 Wend, 469) the action was for running one boat against another in the Erie canal, and the court held that if the injury was occasioned by unavoidable accident, no action would lie for it; but if any blame was imputable to the defendant, he would be liable.   In *Brown* v. *Kendall* (6 Cushing, 292) the defendant having interfered to part his dog and the plaintiff's, which were fighting, in raising his stick for that purpose, accidentally struck the plaintiff and severely injured him; it was held that he was not liable.   In writing the opinion of the court, Chief Justice SHAW says: " It is frequently stated by judges that where one receives injury from the direct act of another, trespass will lie.   But we think this is said in reference to the question whether trespass and not case will lie, assuming that the facts are such that some action will lie.   These *dicta* are no authority, we think, for holding that damage received by a direct act of force from another will be sufficient to maintain an action of trespass, whether the act was lawful or unlawful, and neither willful, intentional or careless."   " We think, as the result of all the authorities, that the rule is that the plaintiff must come prepared with evidence to show that the *intention* was unlawful, or that the defendant was in *fault*; for if the injury was unavoidable and the conduct of the defendant was free from blame, he will not be held liable.   If, in the prevention of a lawful act, a casualty, purely accidental, arises, no action can be supported for an injury arising therefrom."   So, too, contrary to what was held in an early English case, if one raise a stick in self-defence to defend himself against an assault and accidentally hit a third person, he cannot, in my opinion, be made liable for the injury thus, without fault or negligence, inflicted.

In *Rockwood* v. *Nelson* (11 Cushing, 221) Mr. Justice Thomas says : " Nothing can be better settled than that if one do a lawful act upon his own premises, he cannot be held responsible for injurious consequences that may result from it, unless it was so done as to constitute actionable negligence."

In *Bissell* v. *Booker* (16 Ark., 308), it was held that one who is hunting in a wilderness is not bound to anticipate the presence, within range of his shot, of another man, and that he is not liable for an injury caused unintentionally by him to a person of whose presence he was not aware. (See also the cases of *Driscoll* v. *The Newark and Rosendale Co.*, 37 N. Y., 637.)

In *Spencer* v. *Campbell* (9 Watts & S., 32) a man drove a horse to defendant's steam grist-mill to get some grist which he had had ground, and he was thus lawfully upon defendant's premises and was just as much entitled to protection there as if he had been upon his own premises. While there the steam boiler exploded and killed his horse, and the action was brought for the value of the horse; and it was held that, to entitle the plaintiff to recover, he was bound to show the want of ordinary care, skill and diligence. I am unable to see how that case differs in principle from the one at bar. To sustain the broad claim of the plaintiff here, it should have been held in that case that the owner of the steam boiler was absolutely liable, irrespective of any care, skill or diligence on his part, for any damage which the boiler by its explosion occasioned to any property lawfully in the vicinity. Within the rules laid down by these authorities, the defendants in this case could not, without proof of negligence, be made liable for injuries caused to the persons of those who were near at the time of the explosion; and it would be quite illogical to hold them liable for injuries to property, while they were not liable for injuries to persons by the same accident.

In support of the plaintiff's claim in this action the rule has been invoked that, where one of two innocent parties must

suffer, he who puts in motion the cause of the injury must bear the loss. But, as will be seen by the numerous cases above cited, it has no application whatever to a case like this.

This examination has gone far enough to show that the rule t least in this country, a universal one, which, so far as I ern, has no exceptions or limitations, that no one can liable for injuries to the person or property of another me fault or negligence on his part.

ase the defendants had the right to place the steam their premises. It was in no sense a nuisance, have found that they were not guilty of any The judgment in their favor should, therefore, ffirmed at the General Term, unless there were charge, or refusal to charge, of the judge who the trial, and these alleged errors I will now mine.

lleged that the judge erred in charging the jury that endants are not liable for negligence or want of skill on e part of the manufacturers of the boiler in question not known to them;" " that defendants are not liable except upon proof of negligence or unskillfulness on the part of the authorized servants or agents of the company;" " that there is no proof of any relation between the plaintiff and defendant, Buchanan, creating any obligation or duty on the part of the latter toward the former;" " that defendant, Buchanan, is not liable for any negligence or unskillfulness on the part of the Saratoga Company or ᴐn the part of the manufacturers of the boiler in question." These are not found in the charge, but were decisions made upon the motion for a nonsuit, and were not excepted to.

The judge charged the jury "that if they were of opinion that the reduction by Goddard (the engineer and agent of the paper company, who had charge of the boiler) of the steam pressure from 120 to 110 was a proper, prudent and sufficient exercise of care and skill under the circumstances, that the defendants were not liable on account of leakage;" " that the cold shut in the head that previously gave out was

no evidence of the cold shut in the head that did give out;"
" that if Goddard told Bullard that it would be prudent to
run the steam boiler at 110, and if Bullard believed that and
acted upon it, then he was not liable;" "that if the ju
found from the evidence that Goddard came to the concl
that to reduce the pressure from 120 to 110 would ren
use of the boiler prudent and safe, and communica
idea to Bullard, he, Bullard, was not personall
These charges were excepted to by plaintiff's counse
were requests to charge on the part of the defenda
to by the judge.   Some of them should properl
somewhat qualified and explained, and are theref
some criticism.   But we must look at the whole
judge of it from its whole scope, and if, taking it
it presented the questions of law fairly to the jur
to mislead them, exceptions to separate propositi
or to detached portions of it, will not be upheld.   As s
Chief Judge CHURCH, in *Caldwell* v. *New Jersey Steam*
*Co.* (47 N. Y., 282), "If the charge as a whole conveyed t
the jury the correct rule of law, on a given question, the judg-
ment will not be reversed although detached sentences may be
erroneous; and if the language employed is capable of dif-
ferent constructions, that construction will be adopted which
will lead to an affirmance of the judgment, unless it fairly
appears that the jury were, or at least might have been, mis-
led."

The judge in his charge submitted the whole question of
negligence to the jury.   He charged that the defendants were
liable for the omission of such care as men of ordinary
prudence engaged in the use of such a steam boiler in
such business would exercise, and that they were liable for
any imperfections in the boiler, which contributed to the
explosion, which were known to them; but that if the explo-
sion was caused by the cold shut in the head of the boiler
which were imperceptible to the defendants or undiscoverable
on examination or by the application of known tests, they
were not liable.   He charged the jury fully in reference to the

leakage of the boiler, and his charge upon that subject was fully as favorable to the plaintiff as he could claim. He called the attention of the jury to all the facts connected with it and to what Goddard had told Bullard about it, and stated to them that they had a right to say, from all the facts, whether or not Bullard was chargeable with negligence in the use of the boiler, under the circumstances. I think, from the charge as made, the jury could not have failed to understand that the defendants were to be held liable for any defects in the manufacture of the boiler which they knew or ought to have known, and for any negligence in the use of the boiler which could be attributed to them.

The plaintiff requested the court to charge " that the defendants cannot excuse or justify themselves in the use of the boiler in question, on the ground that the same was purchased of reputable manufacturers." This the judge refused to charge, and the plaintiff excepted. The principle of law involved in this request was fairly covered by the charge as made, and yet it may well be doubted whether the judge would have been justified in charging in the language of the request. The fact that the defendants bought the boiler of reputable manufacturers was one of the facts tending to a justification which the jury were to consider. It was not of itself a conclusive justification, and the judge did not charge that it was. If he had refused to charge that they could not justify on the *sole* ground that they had purchased it of reputable manufacturers, it would have been error. A charge in the very language of the request might have misled the jury by taking from their consideration the fact that the boiler was bought from reputable manufacturers upon whose judgment, skill and integrity the defendants had the right to place some reliance.

I have, therefore, reached the conclusion that no error was committed upon the trial of this action, and it follows that the order of the General Term must be reversed, and the judgment entered upon the verdict must be affirmed, with costs.

All concur.

Order reversed and judgment accordingly.