ELMER PARISH, by his Next Friend, Appellant, v. M. A. WILLIAMS, Appellee.

Negligence: OPERATING ON BLACKSMITH'S ANVIL NEAR SIDEWALK: INJURY TO PASSER-BY: EVIDENCE. While the defendant, a blacksmith, was working in his shop at his anvil, with the door of the shop on the side of the street open, a spawl from his hammer struck a passer-by, and so injured his eye, as to make its removal necessary. This action being brought to recover damages for such injury, because of the alleged negligence of the defendant, it appeared that said doorway was about six feet wide, and that the anvil stood opposite the doorway, about six feet from the sidewalk, with the horn of the anvil towards the door. There was evidence also that it was a common thing for spawls to fly from a blacksmith's hammer, that they were liable to go in most any direction with considerable force, that many accidents were known to blacksmiths of experience to have resulted therefrom, and that with the anvil six feet from the sidewalk there was greater danger to persons passing than there would be if the anvil was further removed from the walk. It further appeared, however, that with the horn of the anvil toward the sidewalk, as in this case, it was not so dangerous as it would be if the side thereof faced the sidewalk. Held, that the question of the defendant's negligence ought to have been submitted to the jury.

*Appeal from Guthrie District Court.*—HON. J. H. HENDERSON, Judge.

SATURDAY, MAY 13, 1893.

THE defendant is the owner of a blacksmith shop in the town of Stuart, in Guthrie county. The shop

is located close to the sidewalk, on the south side of Nassau street. An anvil used by the defendant stands six feet from the sidewalk in the shop, with the horn of the anvil towards the door. The door leading from the sidewalk into the shop is about six feet wide, and the anvil stands nearly opposite to the west side of the door. On the thirteenth day of August, 1890, the defendant was working at the anvil, with the door of the shop open. The plaintiff, who appears by his next friend, was passing along the walk, and when opposite to the door of the shop he was struck in the eye by a spawl from the defendant's hammer, because of which, after much suffering, and considerable treatment to preserve it, the eye was removed. This action is for resulting damage, under a plea of negligence. The answer is a denial. At the close of the plaintiff's testimony the court, on motion of the defendant, directed a verdict in his favor, and from a judgment thereon the plaintiff appeals.—*Reversed.*

*J. A. McCall* and *Sayles & Hinkson*, for appellant.

*Sever & Neal*, for appellee.

GRANGER, J.—This case, on appeal, presents but the single proposition of the correctness of the court's action in refusing to submit the case to the jury. To our minds, the court erred in sustaining the motion. Quite a number of witnesses were called by the plaintiff, and examined with reference to spawls from hammers, and danger because of them, in view of the location of the anvil. A spawl is a scale or piece from the face of a hammer breaking off when a blow is given, and it sometimes goes a long distance, and with considerable force. We can not well present our conclusions without quoting somewhat from the evidence. Mr. Warrington, a blacksmith of over fifty years' experience, testified:

"Spawls fly from hammers, and it is a very frequent thing. Sometimes I have had spawls fly, and the little pieces stick in my arm. Sometimes I have had quite a flesh cut. I knew of one piece flying in a man's eye and putting his eye out. The way these spawls break off the hammer, it is done on the anvil edge; the hammer touching the edge of the anvil when the hammer. is hit too hard. It will break off very often when it strikes the anvil, and the small pieces will fly, and of course it goes in all directions. We have no power over them. It just depends on which way they happen to strike. I have a window now broken from the effects of one, in my shop. Sometimes they go the whole length in the shop with pretty good force. I have known them to go with force enough to go into the ceiling. Spawls are apt to fly out of doors, or any way. It depends a great deal with what force we are using the hammer. It is a common occurrence for spawls to fly from the hammers with which we are working. In my opinion, an anvil that close, six feet, to the sidewalk would be dangerous. It is more dangerous to work with that hammer upon an anvil close to the sidewalk, when people are passing, that it would be at the other end of the shop."

Mr. Young, of thirty years' experience as a blacksmith, testified:

"While you are engaged pounding metals, it is nothing unusual for spawls to fly from the hammer. There would be danger of people being struck by spawls flying from the use of an anvil located within six feet of the sidewalk, on a traveled street running past the open door of the shop. The closer the anvil is to the traveling public and sidewalk, the greater the danger would be with reference to persons passing by on the sidewalk."

Mr. Poling, a blacksmith of about twenty-four years' experience, testified:

"Spawls will fly fifty feet, if they are struck in the right shape. It depends upon the blow. They might go swift enough to penetrate or lodge themselves in wood. There was a man working in my shop that struck the anvil so that a piece went through my leather apron and pants, and lodged in my leg. I have had scales fly in my eyes, and burn them. It has not been more than two weeks since my wife came into the shop, she must have been twenty feet away, and I was taking a heat out, and a scale flew, and struck her in the corner of the eye and burned it. Spawls fly swifter than scales. * * * It would be a great deal less dangerous with the side of the anvil facing south, and the horn to the east, with the helper to the south, and the blacksmith with his back to the door, than it would be with an anvil placed as this one is said to have been."

Mr. Ely, with more than thirty years' experience as a blacksmith, testified:

"Persons passing by a blacksmith shop located immediately up close to the sidewalk, where the anvil is placed within five or six feet of the open door, abutting on the sidewalk, sometimes might get burned from flying spawls from hammers in working on the anvil. There is danger to persons passing on the sidewalk, with the anvil so located. The danger would be greater with the anvil located close to the door than if located in the rear of the shop, or further back. * * * It is generally understood and believed among blacksmiths that spawls flying from the hammers, and sparks and pieces of steel flying from the anvil, sometimes cause injuries to persons standing or passing by. The nearer the sidewalk you locate the anvil, the hotter the pieces."

There is always a delicacy, if not danger, in discussing the effect of evidence, by an appellate court,

where a new trial is to follow. We must, however, say that if, upon a question of negligent location of the anvil as to passers-by, under the evidence we have quoted, the jury had found for the plaintiff, the finding would have had ample support. We should then look further to the record, to see if, because of other facts, or evidence, a different rule should apply.

The appellee has quoted evidence upon which he relies for that purpose, which is short, and we give it, in the order of its presentation in argument. William Warrington: "We have no power over them (spawls)." "I think the question of being five feet from the door has nothing to do with it." "I don't protect from the side." "Hammers that have not been tempered for twelve years, get soft, and then they break, but they are not so liable to break." T. B. Young: "Been a blacksmith thirty years. I have no knowledge when they will fly.  *  *  *  Can not say that ever saw a spawl fly from a hammer and strike the shop. In the ordinary line of business, I would not think there was any particular danger in hammering over an anvil six feet from the sidewalk, on a common wagon tire, getting ready to weld it. *Question.* Do you say there is no particular danger in scarfing with it six feet away, or five feet? *Answer.* Not in the usual way." "There is more danger with the helper's side of the anvil turned towards the street. If the anvil set back with the face towards the street, it would be more dangerous than it would be with the horn towards the street. The anvil with the horn pointing towards the street, and the helper's side towards the east, is less dangerous than if he was further away, with the helper's side towards the sidewalk. It is not as dangerous with the horn towards the street as it is with the horn the other way." T. Poling: "Spawls do not frequently fly from hammer, in common use, except from some hammer that would be too hard." Cross-examination: "I would not think

the anvil dangerous, if I were working there. As a general thing, a hammer that has been used four or five years is liable to be soft, and the spawls would not be as likely to fly when you strike the anvil, as if it were tempered every year. * * * I would think, if this anvil were placed the other way, * * * it would be more dangerous than it is with the horn facing the street." S. J. Ely: "Been blacksmithing thirty-two years. It is more careful to place the anvil with the horn towards the door than to place it around the other way. Most all the spawls go away from the man. I consider that a careful way of placing an anvil." Witness Poling: "I would not think the anvil dangerous if I were working there." Witness Young: "In the ordinary line of business, I would not think there was any particular danger in hammering over an anvil six feet from the sidewalk." Witness Ely: "I would consider that a careful way of placing an anvil."

There is nothing, to our minds, in these additional quotations from the evidence, to change the rule. The most that can, consistently, be claimed for them, is that they create doubts as to a conclusion of fact. Their principal effect is, not as to danger because of location of the anvil too near the sidewalk with the open door, but as to the comparative danger of placing the anvil with the horn, instead of the face, towards the door; that is, they deal with the .question as to which is the most dangerous. Admitting that the placing of the horn of the anvil, instead of the side, towards the door, would be safer, the point is by no means conclusive of the case. An equally, if not more, important consideration is as to the location of the anvil with reference to the door and sidewalk. That danger is to be apprehended from scales and spawls is not only manifest from the facts of this case, but from evidence of other instances of injury, and the manner and rapidity of their flight. In this case this

plaintiff, in passing along the sidewalk, is struck by a spawl with such force as to penetrate the lid of the eye, the injury resulting in its destruction. If we are to sustain the action of the court, the effect of our holding will be to say that the anvil may be kept there, as a matter of law, and that passers-by are to take the chances against other like occurrences. We are not aware of any case where such a rule has been sustained.

We notice a single case, cited by appellee, to indicate the line of authorities relied upon to sustain the ruling of the court. It is that of *Losee v. Buchanan*, 51 N. Y. 476. By the explosion of a boiler the pieces were thrown onto the premises and into the buildings of the plaintiff. The plaintiff claimed a right of recovery, even without negligence, on the ground that the casting of the pieces onto his premises was in the nature of a trespass, and that a right of recovery should be the same as in case of wrongful entry. The court refused to sanction such a rule, and rightly so, holding that negligence must be shown to justify a recovery. The court used this language: "We must have factories, machinery, dams, canals and railroads. They are demanded by the manifold wants of mankind, and lay at the basis of our civilization. If I have any of these upon my lands, and they are not a nuisance, and are not so managed as to become such, I am not responsible for any damages they accidentally and unavoidably do my neighbor. * * * I hold my property subject to the risk that it may be unavoidably and accidentally injured by those who live near me; and as I move about upon the public highways, and in all places where other persons may lawfully be, I take the risk of being accidentally injured in my person by them without fault on their part." It is further said in the opinion: "I have so far found no authorities and no principles which fairly sustain the broad claims made by the plaintiff [stated supra], that the defend-

ants are liable in this action, without fault or negligence on their part, to which the explosion of the boiler could be attributed." The *gravamen* of the complaint in this case is negligence, and there is no attempt at a recovery upon any other ground. It is said in argument, with a view, evidently, to bring it within that case, that there is no claim that the blacksmith shop is a nuisance. Not, perhaps, in specific terms, but the averments, if true, making the manner of its operation dangerous to the public safety, render it a nuisance, and the distinction between the cases is to be maintained throughout. We hold it to be purely a question of a right of recovery on the ground of negligence, and we are clearly of the opinion that the state of the evidence is such that the case should have been submitted to the jury.

The judgment is REVERSED.